# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| **JAMES W. HOEKSTRA, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case number 4:08CV0267 TCM** |
| | ) | |
| **CITY OF ARNOLD, MISSOURI, a** | ) | |
| **municipal corporation, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court[1] on a motion to dismiss filed by Defendant American Traffic Solutions, Inc. (ATS) [Doc. 37] and a Joint Motion to Dismiss filed by the other Defendants [Doc. 32]. Also pending before the Court are a request for oral argument on their motion to dismiss filed by all Defendants except ATS [Doc. 39]; all Defendants' Joint Motion to Stay Discovery [Doc. 40]; ATS's motion for leave to file supplemental memorandum in support of its motion to dismiss [Doc. 72]; and all other Defendants' motion for leave to file their supplemental memorandum of law in support of their joint motion to dismiss [Doc. 75]. Before any Defendant answered James Hoekstra's and Kara Hoekstra's original complaint, the Hoekstras, along with Timothy J. Kilper, Ran Service Co., and Christine C. Schorr (Plaintiffs) filed a nine count first amended complaint [Doc. 4] seeking actual and punitive damages from fifteen Defendants. Defendants are: the City of Arnold (City); ATS; Mark Powell, the Mayor of the City of Arnold (Mayor), who is sued in his

---

[1] The case is before the undersigned United States Magistrate Judge by written consent of the parties. See 28 U.S.C. § 636(c).

individual and official capacities; Paul Vinson, William A. Moritz, Phil Amato, Alfred Ems, Randy Crisler, John Brazeal, Joyce Deckman, and Claude Cooley, members of the City of Arnold's City Council (Council Members), who are sued in their individual and official capacities; Robert T. Shockey, Chief of Police of the City of Arnold (Police Chief), who is sued in his individual and official capacities; and Steve Musial, William Bonsack, and Jeremy Christopher, Police Officers for the City of Arnold (Police Officers), who are sued only in their official capacities.

In Counts I and II of the first amended complaint, respectively, Plaintiffs allege that all Defendants are liable for direct and conspiracy violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962 and 1964 (§ 1962 and § 1964). (First Am. Compl. at 14-19 [Doc. 4].) In Counts III and IV, respectively, Plaintiffs allege that all Defendants are liable under 42 U.S.C. § 1983 (§ 1983) for procedural and substantive due process violations, and, in Count V, Plaintiffs seek relief under § 1983 for Defendants' alleged conspiracy to violate Plaintiffs' civil rights. (Id. at 19-26.) In Count VI, Plaintiffs allege that all Defendants except ATS and Police Officers are liable under § 1983 based on their alleged failure to train, supervise, instruct, or control others. (Id. at 26-30.) For the state law claims, set forth in Counts VII, VIII, and IX, Plaintiffs allege that all Defendants are liable for abuse of process, fraudulent misrepresentation, and civil conspiracy, respectively. (Id. at 31-37.)

## Background

The allegations of the first amended complaint show that, on or before July 1, 2006, Defendants City and ATS entered into an agreement for ATS to install "red light cameras"

at various intersections in City; for ATS to provide City with two photographs of each vehicle committing a traffic light violation at those intersections; for ATS to provide an internet site for credit card payments of traffic violations identified by the "red light cameras"; and for City to pay ATS a portion of each payment collected for "red light camera" violations. (Id. ¶¶ 15-20 and 42.)

Additionally, the allegations, as well as a copy of the Ordinance attached to the first amended complaint, show that, on July 27, 2006, City enacted Ordinance No. 2.2 (Bill No. 2176), codified as City of Arnold, Missouri, Code of Ordinances ("Arnold Code"), chapter 23, article V, division 2, §§ 23.181 to 23.187. (Id. ¶ 21 and First Am. Compl. Ex. 1 [Doc. 4-1].) This Ordinance, which the Court will refer to as the "Red Light Camera Ordinance," authorizes the installation and operation of an automated red light enforcement system in City "for the purpose of enforcing traffic control signal regulations as provided in section 23-173."[2] Arnold Code, ch. 23, art. V, div. 2, § 23-182. (First Am. Compl. Ex. 1 at 2 [Doc. 4-1].) In relevant part, the Red Light Camera Ordinance provides that the installed cameras take pictures of the intersection's steady red light, a vehicle going through that red light, and the license plate of that vehicle; and expressly prohibits the taking of a picture of the vehicle's occupants. Arnold Code, ch. 23, art. V, div. 2, § 23-181. (Id. at 1.) City's Police Department "is responsible for the enforcement and administration of " the Red Light Camera Ordinance. Arnold Code, ch. 23, art. V, div. 2, § 23-184(a). (Id. at 2.) The

---

[2] Section 23-173 states, in relevant part, that "[v]ehicular traffic facing a steady red signal alone [on a traffic-control signal] shall stop before entering the crosswalk on the near side of the intersection or, if none, then before entering the intersection and shall remain standing until a green indication is shown." Arnold Code, ch. 23, art. V, div. 1, § 23-173(a)(3)(a), http://www.municode.com/resources/gateway.asp?pid=11509&sid=25.

Ordinance requires a City police officer to review the photographs and, when a violation is found, allows the officer to use specified sources to obtain additional information about the vehicle's owner that is necessary to complete the Notice of Violation, and directs the officer to complete the Notice of Violation and forward it to City's prosecutor. Arnold Code, ch. 23, art. V, div. 2, § 23-184(b). (Id.) If the prosecutor "on his or her information and belief, concludes that a violation of section 23-173 was committed," the prosecutor completes a section of the Notice of Violation "to create an information or complaint that charges the owner with the commission of a violation of section 23-173 [and] file[s] that information or complaint with the municipal court." Arnold Code, ch. 23, art. V, div. 2, § 23-184(c). (Id.) The municipal court clerk issues and then serves summons, by mailing the Notice of Violation and photographs to the vehicle's owner. Arnold Code, ch. 23, art. V, div. 2, § 23-184(d). (Id. at 2-3.)

The prosecution of a violation of § 23-173 based on the Red Light Camera Ordinance is conducted "in the same manner as any other violation of" City's ordinances. Arnold Code, ch. 23, art. V, div. 2, § 23-185(a). (Id. at 3.) The Ordinance creates a rebuttable presumption that the owner of a motor vehicle going through an intersection's red light "was the driver of the vehicle at the time and place the violation was captured by" the camera, and sets forth various affirmative defenses. Arnold Code, ch. 23, art. V, div. 2, § 23-183 and § 23-186. (Id. at 2, 3-4.) Upon a finding of guilt for a violation under the Red Light Camera Ordinance, the Ordinance provides for the imposition of a

> penalty (fine) . . . [that is] the same as the penalty (fine) for a finding of guilt
> for a violation of Section 23-173 where an automated red light enforcement

system was not used.  Except that no points will be assigned to the violator['] s drivers license when guilty of an automated red light enforcement violation.

Arnold Code, ch. 23, art. V, div. 2, § 23-187.  (Id. at 4.)

The allegations of the first amended complaint, as well as the attachments to the first amended complaint further reveal that Plaintiffs were charged with violating the Ordinance[3]

---

[3] Each Notice of Violation sent to Plaintiffs states the conduct of "Failure to Stop at a Red Light" was "in violation of:  Bill No. 2102."  (First Am. Compl., Exs. 2, 2-A, 2-B, 2-C, 2-D [Doc. 4-1].)  The Red Light Camera Ordinance at issue in this case is derived from "Bill No. 2176."  (First Am. Compl., Ex. 1 [Doc. 4-1].)  An "Editor's Note" accompanying the Red Light Camera Ordinance states:

> Ordinance No. 2.2 (Bill No. 2176), §§ 2-8, adopted July 27, 2006, did not specifically amend the Code.  Therefore, such ordinance has repealed the former Div. 2, §§ 23-181 – 23-188, and enacted a new Div. 2 as set out herein, at the editor's discretion. The former Div. 2 pertained to [an] automated red light enforcement program and derived from Ord. No. 2.2 (Bill No. 2102), §§ 2-9, 6-16-05.

(First Am. Compl., Ex. 1 at 1 [Doc. 4-1].)  Additionally, the Notice of Violation sent to the Hoekstra Plaintiffs states:

> The City of Arnold, Missouri has adopted regulations for the automated enforcement of traffic control signal regulations.  Accordingly pursuant to the terms of Ordinance 2102, the Arnold Police Department is authorized to install and operate an automated red light enforcement system within the City for the purpose of enforcing traffic control signal regulations.  It has been determined that your vehicle has proceeded into an intersection by crossing the stop line when the traffic control signal, for the direction in which your vehicle was traveling, was emitting a steady red signal; red light running damages the public by endangering vehicle operators and pedestrians alike.
>
> Your failure to appear in court at the time specified on this citation or otherwise respond to this Notice of Violation as directed may result in a warrant being issued for your arrest.

(First Am. Compl., Ex. 2 [Doc. 4-1].)  The record does not contain a copy of either "Bill No. 2102" or its codification.

The parties have not raised or discussed in the pending pleadings and motions any issues that may arise as a result of the July 27, 2006, enactment of the Red Light Camera Ordinance derived from "Bill 2176," the apparently simultaneous repeal of the prior related ordinance derived from "Bill 2102," and the references to violations of "Bill No. 2102" that are in the 2007 and 2008 Notices of

through a Notice of Violation sent to the Hoekstra Plaintiffs in August 2007 and Notices of Violation sent to the other named Plaintiffs in February 2008. (First Am. Compl. ¶ 26 [Doc. 4]; First Am. Compl., Exs. 2, 2A, 2B, 2C, and 2D [Doc. 4-1].) Each Notice of Violation identified a City police officer and reported the officer had "proba[b]le cause" to believe that on a specified date at a specified intersection the relevant Plaintiff or Plaintiffs unlawfully "operate[d]/dr[o]ve" a specified vehicle, committing the offense of "Failure to Stop at a Red Light" in violation of the Ordinance. (First Am. Compl. ¶ 27 [Doc. 4]; First Am. Compl., Exs. 2, 2A, 2B, 2C, and 2D [Doc. 4-1].) Defendant Police Officers issued these Notices of Violation. (First Am. Compl. ¶¶ 11 and 27.) Each Notice of Violation also stated "[o]n information, the City's prosecutor charges the Defendant and informs the court that above facts are true and punishable by a fine of $94.50." (Id. ¶ 32.)

After receiving the Notice of Violation, James Hoekstra wrote the City Clerk a letter confirming his case had been "continued" and asking whether he should get an attorney. (First Am. Compl. ¶ 43 [Doc.4]; First Am. Compl., Ex. 4 [Doc. 4-1].) He then received a summons stating, in relevant part, that his failure to appear at the court date would result in the issuance of a warrant for his arrest. (First Am. Compl. ¶ 44; First Am. Compl., Exs. 5 and 6 [Doc. 4-1].) City dismissed the charges against the Hoekstra Plaintiffs after their attorney requested a trial. (First Am. Compl. ¶ 46.)

### Discussion

---

Violation at issue in this case.

The Court will first address Defendants' motions to dismiss under Fed. R. Civ. P. 12(b)(6).  With respect to these motions, Plaintiffs filed a brief in opposition to the motions, Defendants filed replies, and Plaintiffs filed a surreply.  Plaintiffs attached to their surreply materials that are not attached to the first amended complaint.  The Court will not rely on those materials in resolving the pending motions to dismiss,[4] and, therefore, will not convert those motions to motions for summary judgment under Fed. R. Civ. P. 12(d).  The Court will, however, consider the exhibits attached to the first amended complaint in resolving the motions to dismiss.  **Great Plains Trust Co. v. Union Pac. R. Co.**, 492 F.3d 986, 990 (8th Cir. 2007); **Abels v. Farmers Commodities Corp.**, 259 F.3d 910, 921 (8th Cir. 2001); **Morton v. Becker**, 793 F.2d 185, 187 (8th Cir. 1986).

ATS moves to dismiss Plaintiffs' claims for failure to state a claim, based on arguments that: the Red Light Camera Ordinance is constitutional; Plaintiffs have no standing to bring this lawsuit in that they have not suffered an injury based on a failure of due process under that Ordinance; ATS is not a state actor and, therefore, cannot be sued under 42 U.S.C. § 1983, and ATS did not either make decisions or form the intent necessary to support the RICO and state law claims; even if ATS is a state actor, it is entitled to qualified immunity because any constitutional right involved in the case was not clearly established; and the Court should not exercise supplemental jurisdiction to decide whether the City's Red Light Camera Ordinance conflicts with state law.

--------

[4] Defendants' motions for leave to file supplemental memoranda of law in support of their motions to dismiss will be denied.  In light of this ruling, the Court will not consider the "supplemental memorandum of law in support of their joint motion to dismiss" filed by all Defendants except ATS [Doc. 76].

The other Defendants jointly move to dismiss Plaintiffs' claims for failure to state a claim on the grounds that: Plaintiffs lack standing in that the Hoekstras' cases were dismissed and there is no allegation regarding the disposition of the other Plaintiffs' cases; the Red Light Camera Ordinance is constitutional; City and the individual Defendants named in their official capacities cannot form the requisite intent necessary for a civil RICO violation; the Mayor and Council Members cannot be liable in their individual capacities either for federal RICO and § 1983 claims or for state intentional tort claims, due to their absolute legislative immunity for legislative actions; and Defendants cannot be held individually liable because they have qualified immunity. These Defendants also argue this Court should not exercise supplemental jurisdiction over the state law claims in Counts VII, VIII, and IX, or the argument that the Ordinance conflicts with state law. Finally, these Defendants contend the Court should dismiss Plaintiffs' requests for punitive damages against City and the individual Defendants sued in their official capacities.

Rule 12(b)(6) Standard. When ruling on a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim, the Court must take as true the alleged facts and determine whether they are sufficient to raise more than a speculative right to relief. **Bell Atl. Corp. v. Twombly**, 127 S.Ct. 1955, 1965 (2007). The complaint must have "'a short and plain statement of the claim showing that the [plaintiff] is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" **Id.** at 1964 (quoting Fed. R. Civ. P. 8(a)(2) and then Conley v. Gibson, 355 U.S. 41, 47 (1957)). While detailed factual allegations are not necessary, a complaint that contains "labels and conclusions," and "a formulaic recitation of the elements of a cause of action"

is not sufficient.  **Id.** at 1964-65.  The complaint must set forth "enough facts to state a claim to relief that is plausible on its face."  **Id.** at 1974.  If the claims are only conceivable, not plausible, the complaint must be dismissed.  **Id.**

Plaintiffs' Standing.  Both motions to dismiss present arguments that Plaintiffs lack standing to pursue their claims.

Standing is "a jurisdictional prerequisite that must be resolved before reaching the merits of a suit."  **City of Clarkson Valley v. Mineta**, 495 F.3d 567, 569 (8th Cir. 2007). To establish standing, the party invoking federal jurisdiction must establish, at a minimum, three elements: (1) that it suffered an injury to a legally protected interest, or injury in fact, that is concrete and particularized, as well as actual or imminent, rather than conjectural or hypothetical; (2) that there is "a causal connection between the injury and the conduct complained of[, i.e., that] the injury [is] 'fairly . . . trace[able] to the challenged action of the defendant'"; and (3) that it is "'likely' . . . that the injury will be 'redressed by a favorable decision.'"  **Lujan v. Defenders of Wildlife**, 504 U.S. 555, 560-61 (1992) (quoting <u>Simon v. Eastern Ky. Welfare Rights Org.</u>, 426 U.S. 26, 41-42, 38, and 43 (1976)).  To establish the "particularized" aspect of the injury, "the injury must affect the plaintiff in a personal and individual way."  **Id.** at 560 n.1.  Importantly, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [the court] 'presumes that general allegations embrace those specific facts that are necessary to support the claim.'"  **Id.** at 561 (quoting <u>Lujan v. National Wildlife Fed'n</u>, 497 U.S. 871, 889 (1990)).

Defendants argue that Plaintiffs lack standing because the allegations do not demonstrate they have suffered a sufficient injury. In particular, Defendants point out the allegations establish that the Hoekstras' ordinance violation cases were dismissed and there is no mention of the disposition of the other Plaintiffs' cases. (See First Am. Compl. ¶¶ 26, 27, and 46 [Doc. 4].) Defendants rely on **Shavitz v. City of High Point**, 270 F. Supp. 2d 702, 709-10 (M.D. N.C. 2003), vacated in part sub nom. on other grounds, Shavitz v. Guilford County Bd. of Educ., 100 Fed. Appx. 146 (4th Cir. June 7, 2004) (No. 03-1960) (unpublished per curiam opinion), as support for dismissal on standing grounds.

Plaintiffs counter that they have sufficiently pleaded an injury that is concrete and particularized, as well as actual and imminent, because they have alleged that as a result of Defendants' conduct they were "damaged in that they were charged with and forced to defend a red light [camera ordinance] violation . . ., suffered embarrassment, humiliation, and inconvenience[, and were] forced to hire attorneys and expend money for attorneys' fees and costs." (First Am. Compl. ¶¶ 59, 65, 74, 79, 86, 98, 109, 119, 126 [Doc. 4].) Additionally, Plaintiffs point out that they have alleged their injuries are fairly traceable to Defendants' unlawful acts by alleging their injuries are due to or the direct and proximate result of the Defendants' actions. (Id.) Plaintiffs cite **Idris v. City of Chicago**, No. 06 C 6085, 2008 WL 182248, at *2-3 (N.D. Ill. Jan. 16, 2008), aff'd, 2009 WL 18138 (7th Cir. Jan. 5, 2009) (No. 08-1363), in support of their position that they have standing.

Taking the factual allegations as true, the allegations are insufficient to demonstrate the Hoekstra Plaintiffs, whose Notices of Violation have been dismissed, have standing to pursue the present claims. None of the allegations demonstrate those Plaintiff are now or

will in the immediate future be the subject of another Notice of Violation. Furthermore, no allegation intimates that, to obtain the dismissal, these Plaintiffs lost their liberty in any manner or had to pay or paid City any money. Additionally, there is no allegation indicating that these Plaintiffs were improperly treated differently than others who may be the subject of Red Light Camera Ordinance violations. Therefore, there is no indication that the Hoekstra Plaintiffs suffered a concrete and particularized injury in fact that is actual or imminent as a result of the Ordinance and Notices of Violation served on them.

The **Idris** case does not support a determination that the Hoekstra Plaintiffs have standing to pursue their claims. In **Idris**, the United States District Court for the Northern District of Illinois concluded that three plaintiffs, who had been issued traffic citations under an automated red light camera ordinance, had standing to challenge the ordinance, upon finding they were injured in that "they paid or have been ordered to pay fines of $90, and face the possibility of paying additional fines in the future." **Id.** at *2-3. Here, the allegations do not indicate that the Hoekstra Plaintiffs had to pay or were ordered to pay a fine to obtain the dismissal of their Notices of Violation, and the allegations do not demonstrate that those Plaintiffs face the possibility of paying additional fines in the future, because their cases are no longer pending and there is no allegation that they have other similar Notices of Violation pending.

To the extent it may apply to the injury requirement for standing purposes, the decision in **Fields v. City of Omaha**, 810 F.2d 830 (8th Cir. 1987), is also distinguishable and does not require a conclusion that the Hoekstra Plaintiffs have standing. The plaintiff in that case had been arrested for "loitering and prowling" in violation of an ordinance, and

spent nine days in jail.  **Id.** at 832.  At trial, the loitering and prowling charge was dismissed.  **Id.**  The plaintiff then filed a § 1983 damages action alleging her constitutional rights had been violated by her arrest and incarceration.  **Id.**  A jury reached a verdict in favor of the defendants in the § 1983 action.  **Id.**  On appeal, the United States Court of Appeals for the Eighth Circuit found the ordinance was "unconstitutionally vague on its face, in violation of due process," found "[t]he City [of Omaha wa]s liable to Fields under § 1983 for compensatory damages," and remanded to the district court for a determination of damages and entry of declaratory relief.  **Id.** at 834.  Here, there is no indication that the Hoekstra Plaintiffs experienced a similar injury, because there is no allegation that either one of the Hoekstra Plaintiffs was arrested and detained for any period of time prior to the dismissal of their Notices of Violation.

Plaintiffs' reliance on **Faustin v. City, County of Denver, Colo.**, 268 F.3d 942, 947-48 (10th Cir. 2001), to support the Hoekstra Plaintiffs' standing is not persuasive.  In that case, the United States Court of Appeals for the Tenth Circuit concluded, in relevant part, that an abortion protestor, whose ordinance violation citation had been dismissed, had standing to pursue damages and declaratory relief, but not injunctive relief, under § 1983 "based on her prosecution."  **Id.** at 948.  That case is distinguishable because it addressed the violation of the plaintiff's first amendment rights, rights which are not at issue in this case.

Under the circumstances, Defendants' motions to dismiss for lack of standing will be granted as to the Hoekstra Plaintiffs.

The motions to dismiss, however, will not be granted with respect to the other Plaintiffs.  Taking the factual allegations as true and presuming the general allegations

embrace specific facts necessary to support the claims, **Lujan**, 504 U.S. at 561 (quoting National Wildlife Fed'n, 497 U.S. at 889), the other Plaintiffs' allegations that they have had to defend the Notices of Violation suggest that those Plaintiffs have suffered an injury sufficient for standing purposes at this stage of the proceedings. Moreover, the allegations of the first amended complaint sufficiently demonstrate that those injuries are fairly traceable to Defendants' implementation of the Red Light Camera Ordinance, which those Plaintiffs allege is unlawful, and an award of damages to those Plaintiffs would redress those Plaintiffs' injuries. See **Idris**, 2008 WL 182248, at *3.

Due to the remaining Plaintiffs' allegations that they are defending the Notices of Violation, the **Shavitz** decision does not require a determination that the remaining Plaintiffs lack standing. In **Shavitz**, a plaintiff who received citations under an automated red light camera ordinance was found not to have suffered a concrete and particularized injury to pursue a procedural due process claim regarding a red light camera ordinance because, by refusing to pay the fine and failing to appeal, he did not avail himself of the process the defendants provided. **Shavitz**, 270 F. Supp.2d at 710-11; accord **Williams v. Redflex Traffic Sys., Inc.**, No. 3:06-cv-400, 2008 WL 782540, *4 (E.D. Tenn. Mar. 20, 2008) (a plaintiff, who received a citation under a red light camera ordinance and did not seek a court hearing, did not suffer "a concrete and particularized injury as a result of the allegedly deficient process and therefore ha[d] no standing to challenge it").

Defendants also urge Plaintiffs lack standing based on two § 1983 cases: **Richardson v. City of South Euclid**, 904 F.2d 1050 (6th Cir. 1990) (the plaintiffs sought damages for defending an ordinance violation until the municipal court found the ordinance

unconstitutional and dismissed the ordinance violation proceeding), and **Reyes v. City of Lynchburg**, 300 F.3d 449 (4th Cir. 2002) (the plaintiff sought nominal damages after being acquitted of a violation of an ordinance that was subsequently repealed and then found unconstitutional as applied to the plaintiff). In these cases the appellate courts upheld the entry of summary judgment in favor of the defendants upon finding, in relevant part, that the plaintiffs had not established a constitutional deprivation based on their prosecution under invalid ordinances. **Reyes**, 300 F.3d at 455-57; **Richardson**, 904 F.2d at 1052-55. Due to the arguably contrary Eighth Circuit decision in **Fields**, supra, and the absence of allegations regarding the resolution of the Notices of Violation against the remaining Plaintiffs, **Reyes** and **Richardson** do not require the dismissal of the remaining Plaintiffs for lack of standing at this stage of the litigation.

While the parties did not specifically address any Plaintiff's standing to pursue the RICO claims, standing is a jurisdictional issue that may be raised by the Court sua sponte. **Pucket v. Hot Springs Sch. Dist. No. 23-2**, 526 F.3d 1151, 1156-57 (8th Cir. 2008). Importantly, a RICO claim may not be based on civil rights violations. **Bowen v. Oistead**, 125 F.3d 800, 806 (9th Cir. 1997); **Risenhoover v. 3M Co.**, No. 07-4516, 2008 WL 141777, at *2 (D. Minn. Jan. 14, 2008). Instead, "[e]nacted to strengthen criminal and civil remedies against organized crime, RICO provides a private right of action for any person 'injured in his business or property by reason of a violation of' its substantive prohibitions. 18 U.S.C. § 1964(c)." **Dahlgren v. First Nat'l Bank of Holdrege**, 533 F.3d 681, 689 (8th Cir. 2008).

The Court finds the Hoekstra Plaintiffs lack standing to pursue the RICO claims because the allegations reveal no injury to those Plaintiffs' "business or property" as a result of Defendants' alleged violations of RICO's substantive prohibitions through the initiation and resolution of the Notices of Violation issued pursuant to the Red Light Camera Ordinance. See **Hamm v. Rhone-Poulenc Rorer Pharmaceuticals, Inc.**, 187 F.3d 941, 954 (8th Cir. 1991) (plaintiffs who did not show injury to "business or property" within the meaning of § 1964(c), but only damage to their reputation, lacked standing to pursue RICO civil claims).

At this stage of the proceedings, the allegations in the RICO claims are sufficient to support the remaining Plaintiffs' standing to pursue those claims.

The motions to dismiss on standing grounds will be granted as to the Hoekstra Plaintiffs and otherwise denied. Because the Hoekstra Plaintiffs' federal claims are being dismissed, the Court will not exercise supplemental jurisdiction over those Plaintiffs' state law claims and the Hoekstra Plaintiffs' state law claims will be dismissed as well. At this point, all the claims remain pending to the extent they are pursued by Plaintiffs Timothy J. Kilper, Ran Service Co., Inc., and Christine C. Schorr, who will be referred to collectively as Plaintiffs.

Absolute Immunity. Defendants Mayor and Council Members argue they are entitled to dismissal of the claims pursued against them in their individual capacities based on absolute immunity from claims for monetary damages arising out of the enactment of legislation. While not disagreeing that these Defendants are entitled to absolute legislative immunity protection, other than on the § 1983 failure to train claim in Count VI because that

claim does not involve a legislative act, Plaintiffs urge this Court to wait to decide this issue after discovery to determine the extent of the Mayor's and Council Members' role in the challenged conduct.  Alternatively, to the extent the motion to dismiss is granted on this basis, Plaintiffs ask that the dismissal be without prejudice.

For official conduct within the scope of the immunity, absolute immunity defeats a lawsuit at the outset.  **Mayorga v. Missouri**, 442 F.3d 1128, 1131 (8th Cir. 2006). Therefore, the Court will not wait until after discovery to address the absolute legislative immunity argument.

The parties have not presented either supporting authority or argument directed specifically to the application of absolute legislative immunity to the state law claims.  The Court will not resolve that issue until the parties' positions are presented more fully. The motion to dismiss is denied without prejudice to the extent it presents an issue regarding the application of absolute legislative immunity to the state law claims.

Notably, absolute immunity protection has been applied to both § 1983 claims and RICO claims.  **Parette v. Virden**, 173 Fed. Appx. 534, 536 (8th Cir.  Apr. 3, 2006) (No. 04-3838) (unpublished per curiam opinion) (applying absolute immunity to § 1983 due process and RICO claims against a prosecutor who was "merely performing duties that were integrally a part of the judicial process when he engaged in the challenged conduct"); accord **McNeill v. Town of Paradise Valley**, 44 Fed. Appx. 871, 871 (9th Cir. Aug. 19, 2002) (No. 01-17003) (unpublished memorandum) (concluding "[t]he district court properly dismissed the 42 U. S. C. § 1983 and RICO claims" on judicial immunity and prosecutorial immunity grounds); **Chappell v. Robbins**, 73 F.3d 918, 924 (9th Cir. 1996) ("[W]e find nothing in the

nature of RICO's statutory structure which evinces any clear congressional intent to abrogate legislative immunity" for a civil RICO claim).  Under the circumstances, the Court will consider the allegations to ascertain whether absolute legislative immunity bars further pursuit of the federal claims against Defendants Mayor and Council Members sued in their individual capacities.

"[L]ocal legislators are . . . absolutely immune from suit . . . for their legislative activities." **Bogan v. Scott-Harris**, 523 U.S. 44, 49 (1998) (§ 1983 action).  This immunity "attaches to all actions taken 'in the sphere of legitimate legislative activity.'" **Id.** at 54 (quoting Tenney v. Brandhove, 341 U.S. 367, 376 (1951)); **Hinshaw v. Smith**, 436 F.3d 997, 1008 (8th Cir. 2006).  Among other things, this immunity encompasses actions taken by members of a legislative body to vote on an ordinance and actions by a non-legislative official that are "integral steps in the legislative process," such as signing an ordinance into law. **Bogan**, 523 U.S. at 55.  While the Mayor, sued in his individual capacity, has absolute legislative immunity for the enactment and signing of the Red Light Camera Ordinance, this immunity does not protect him to the extent any claims are based on his ordering the performance of any executive tasks. **Percefull v. Claybaker**, 211 Fed. Appx. 521, 523 (8th Cir. Nov. 9, 2006) (No. 05-4223) (unpublished per curiam opinion) (legislative immunity "has no application where an executive official orders the performance of executive tasks").  Nor would this immunity apply to claims against these Defendants, sued in their individual capacities, for any non-legislative conduct.

In relevant part, the first amended complaint includes factual allegations that City entered into an agreement with ATS (First Am. Compl. ¶ 15 [Doc.4]), that Mayor signed or

directed the signing of the City's Agreement with ATS (id. ¶ 16), that the Red Light Camera Ordinance was enacted on July 27, 2006 (id. ¶ 21), regarding the enforcement of the Ordinance against Plaintiffs (see, e.g., id. ¶¶ 26-33 and 44-46), and regarding the failure of Defendants to seek or obtain "an exemption from § 302.225 from the State of Missouri or its Department of Revenue" (id. ¶ 41). Plaintiffs incorporate these factual allegations in to each of their claims. (¶¶ 47, 60, 66, 76, 81, 88, 100, 111, and 121).

With respect to the RICO civil claim in Count I, the allegations, which focus on the enforcement of the Red Light Camera Ordinance through the use of the internet and mail to obtain money and collect fines from violators, specify that Defendants Mayor and Council Members "participated in this scheme by developing and enacting the scheme to defraud Plaintiffs and other similarly situated motor vehicle[] owners, who are all victims of this scheme." (Id. at 14-15; ¶49(b)). The RICO civil claim in Count I against these Defendants, then, arises out of their legislative conduct enacting the Red Light Camera Ordinance. Absolute legislative immunity protects Defendants Mayor and Council Members, sued in their individual capacities, from this RICO claim. Because the RICO civil conspiracy claim in Count II relies on the allegations set forth in Count I, these Defendants, sued in their individual capacities, are also protected by absolute legislative immunity from the RICO civil conspiracy claim.

With respect to the § 1983 procedural due process claim in Count III, which essentially challenges the provisions of the Red Light Camera Ordinance, there is no allegation specifically identifying Mayor or Council Members as the subject of the allegations. Additionally, the allegations in that Count do not clearly address conduct of

these Defendants except to the extent there is an allegation "Defendants knew or through the exercise of reasonable care should have known that their red light camera Ordinance violated the 14th Amendment to the United States Constitution when it was enacted." (Id. ¶ 73.) Because this § 1983 claim is based, at most, on these Defendants' conduct in enacting the Red Light Camera Ordinance, they are protected by absolute legislative immunity from this claim to the extent they are sued in their individual capacities.

With respect to the § 1983 substantive due process claim in Count IV, although not identified specifically, these Defendants may be the subject of the allegations that "[i]n order to create income for City and ATS, the Defendants have designed and implemented an enforcement and collection methodology for the act of running a red light in contravention of the laws of the United States and Missouri" (id. ¶ 78(a)); that Defendants "compromis[ed] public safety by allowing violators to escape reported points against their license and thereby continue to operate a motor vehicle in a dangerous and hazardous manner so long as they had the continuing ability to pay fines" (id. ¶ 78(d)); that Defendants "compromis[ed] public safety by diverting police manpower away from the patrol and protection of the City of Arnold to a position of revenue enhancement by diverting valuable patrol manpower to analyze images provided by ATS" (id. ¶ 78(e)); that Defendants "requir[ed] Plaintiffs . . . to prove they are innocent due to the City's inherent inability to i[]dentify the person actually operating the vehicle at the time of the alleged violation" (id. ¶ 78(f)); and that Defendants "agree[d] not to report points to the Director of Revenue as required by § 302.302.1(1) if the required amount of money is paid to the City" (id. ¶ 78(i)).  To the extent this claim is based on these Defendants' legislative conduct, they are protected by absolute legislative immunity

from this claim to the extent they are sued in their individual capacities. To the extent this claim is based on non-legislative conduct of these Defendants, the claim remains pending against Defendants Mayor and Council Members sued in their individual capacities.

For the § 1983 conspiracy claim set forth in Count V, the allegations again do not specifically mention these Defendants, but allege Defendants conspired to violate Plaintiffs' and others' civil rights by passing the Red Light Camera Ordinance, installing the red light cameras at various intersections, issuing Notices of Violations without probable cause, collecting money under the Ordinance, avoiding the assessment of points against violators' drivers licenses, failing to intercede to prevent this conduct, and ignoring state laws by encouraging or permitting the challenged conduct. (Id. ¶ 82.) In relevant part, this conduct was allegedly committed "and/or taken under the instruction of those with final policymaking authority in the City." (Id. ¶ 83.) Defendants Mayor and Council Members, sued in their individual capacities, are protected by absolute legislative immunity from this claim only to the extent it is based on their legislative conduct. The claim remains pending against these Defendants, sued in their individual capacities, to the extent it is based on their non-legislative conduct.

The allegations of the § 1983 claim set forth in Count VI are expressly addressed to these Defendants and are based on these Defendants' and other Defendants' alleged failure to train, supervise, control, or instruct others regarding the requirements of the law and the lawful enforcement of the Ordinance. (Id. ¶¶ 89-93 and 95). Because these allegations are not clearly based on legislative conduct of the Mayor and Council Members, absolute

legislative immunity does not protect them, sued in their individual capacities, from this claim.

Therefore, the motion to dismiss filed by all Defendants except ATS is granted in part and denied in part on absolute legislative immunity grounds. That motion is granted so that the RICO claims in Counts I and II, as well as the § 1983 procedural due process claim in Count III, against Defendants Mayor and Council Members sued in their individual capacities are dismissed. Additionally, the § 1983 substantive due process and conspiracy claims in Counts IV and V against Defendants Mayor and Council Members sued in their individual capacities are dismissed only to the extent those claims are based on those Defendants' legislative conduct. The § 1983 claims in Counts IV and V otherwise remain pending against those Defendants sued in their individual capacities. The motion to dismiss filed by all Defendants except ATS is also denied on absolute legislative immunity grounds with respect to the § 1983 failure to train claim in Count VI against Defendants Mayor and Council Members sued in their individual capacities.

Municipality Liability and Liability of Municipal Officials Sued in their Official Capacities under RICO. Defendants, other than ATS, seek dismissal of the RICO claims against City and the individual Defendants sued in their official capacities on the ground that government entities cannot form the intent necessary to violate RICO. **Lancaster Comm. Hosp. v. Antelope Valley Hosp.** 940 F.2d 397, 404-05 (9th Cir. 1991) ; **Smith v. Babbitt**, 875 F. Supp. 1353, 1365 n. 11 (D. Minn. 1995). These Defendants also urge that a RICO civil action may not be maintained against a municipality because a municipality cannot be liable for the treble damages imposed in such an action. **Genty v. Resolution Trust Corp.,**

937 F.2d 899, 914 (3rd Cir. 1991). Additionally, these Defendants argue that, because lawsuits against government officials in their official capacities are treated as lawsuits against the governmental entity itself, **Will v. Michigan Dept. of State Police**, 491 U.S. 58, 71 (1989), the RICO claims against the individual municipal officials sued in their official capacities fail.

Plaintiffs note that neither the Eighth Circuit nor the United States Supreme Court has addressed these issues, but acknowledge that other federal courts "have held that a governmental entity may not be held liable under RICO because deemed incapable of forming the requisite malicious intent and/or because of the treble damages awarded under [RICO]." (Pls.' Br. Opp'n Defs.' Mots. to Dismiss at 22 [Doc. 53].) Plaintiffs "respectfully suggest[, however,] that because the City financially benefit[t]ed from this scheme, a different result should apply, and it should be subject to RICO." (Id.)

Although it appears the Eighth Circuit has addressed issues in at least one civil RICO case against a city, its mayor, and its city council members, among others, **Bieter Co. v. Blomquist**, 987 F.2d 1319 (8th Cir. 1993), that decision did not have under consideration issues regarding the intent necessary for a municipality's liability, a municipality's liability for treble damages, or the liability of municipal officials sued in their official capacities in a civil RICO action. Because, as all Defendants, except ATS, point out and Plaintiffs concede, there is authority supporting the dismissal of the RICO claims against City, and because a lawsuit against the individual defendants, who are City officials, sued in their official capacities, is properly considered a suit against City, **Wilson v. Spain**, 209 F.3d 713, 717 (8th Cir. 2000) (§ 1983 action), the motion to dismiss the RICO claims filed by all

Defendants, except ATS, is granted to the extent it sought dismissal of the RICO claims against City and the individual defendants sued in their official capacities.

Punitive Damages Claims against City and Individual Defendants Sued in their Official Capacities.  All Defendants but ATS urge the claims for punitive damages should be dismissed to the extent they are pursued against City and the individual Defendants sued in their official capacities, citing **City of Newport v. Fact Concerts, Inc.**, 453 U.S. 247 (1981) (a § 1983 action).  Because earlier in this order the Court dismissed the RICO claims against City and the individual Defendants sued in their official capacities, this part of the order will only address the punitive damages claims in the still pending § 1983 and state law claims against City and the individual Defendants sued in their official capacities.  Plaintiffs' briefs do not address this part of the motion to dismiss filed by all Defendants except ATS.

This part of that motion to dismiss is granted so that the § 1983 claims for punitive damages from City and from the individual Defendants sued in their official capacities are dismissed.  See, e.g., **Harvey v. City of Rayne**, No. 08-0699, 2008 WL 5061805, at *1 (W.D. La. Nov. 25, 2008) ("Plaintiff is barred from recovering punitive damages against an official acting in his official capacity").  Cities are not liable for punitive damages under § 1983.  **City of Newport**, supra.  Additionally, § 1983 suits against government officials sued in their official capacities are suits against the governmental entity itself. **Will**, 491 U.S. at 71; **Kentucky v. Graham**, 473 U.S. 159, 165-66 (1985); **Wilson**, 209 F.3d at 717. Because the § 1983 claims against the individual defendants, who are all officials of the City of Arnold, are claims against a municipality to the extent those individuals are sued in their

official capacities, Plaintiffs may not recover punitive damages under § 1983 from those individual defendants sued in their official capacities.

The parties have not presented either supporting authority or argument directed specifically to the propriety of the state law claims for punitive damages from a municipality and from municipal officials sued in their official capacities. The Court will not resolve that issue until the parties' positions are presented more fully. The motion to dismiss filed by all Defendants except ATS is denied without prejudice to the extent it presents this punitive damages issue with respect to the state law claims.

Constitutionality. All Defendants urge the claims should be dismissed on the grounds the Ordinance is constitutional. As noted in the discussion of standing to pursue the RICO claims, the RICO claims are not based on constitutional violations. Additionally, the parties have not expressly addressed the state law claims in relation to the issue of the Ordinance's constitutionality. Therefore, the Court considers the arguments in Defendants' motions to dismiss regarding the constitutionality of the Ordinance as focused on the § 1983 claims only.

To state a claim for relief under § 1983, Plaintiffs must allege "that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." **American Mfrs. Mut. Ins. Co. v. Sullivan**, 526 U.S. 40, 49-50 (1999).

Plaintiffs allege the Red Light Camera Ordinance violates the due process clause in that it allows the issuance of a citation in the absence of probable cause to believe the vehicle

owner was the driver at the time of the violation;[5] the rebuttable presumption in the Ordinance both shifts the burden of proof to the vehicle owner to establish he or she was not driving at the time of the violation and, through the use of an irrational inference to establish a prima facie case, allows City to meet its burden of proof without sufficient evidence establishing that the vehicle owner was driving at the time of the violation; and it permits proof of liability without proof beyond a reasonable doubt. (See, e.g., First Am. Compl. ¶¶ 69-72, 78(b), 78(f), 82(c), and 89(d) [Doc. 4].)[6]  The claims regarding the absence of probable cause, to the extent that is a proper due process claim, and the absence of proof beyond a reasonable doubt arise out of the use of the Ordinance's rebuttable presumption to establish that the vehicle owner was the driver of the vehicle at the time of the Ordinance violation.  Therefore, all of Plaintiff's constitutional due process claims arise out of the Ordinance's rebuttable presumption that the vehicle owner drove the vehicle at the time of the Violation incident.

---

[5]  Plaintiffs point out in their opposition to Defendants' motions that the "issue whether the City may initiate prosecutions for alleged red light camera violations when it does not have probable cause to believe the person charged committed the offense alleged" may be a Fourth Amendment issue, rather than a substantive due process issue, based on the plurality in **Albright v. Oliver**, 510 U.S. 266 (1994) (there is no substantive due process right, but there may be a Fourth Amendment right, arising from malicious prosecution).   (Pls.' Br. in Opp'n Defs.' Mots. to Dismiss at 10 [Doc. 53].)  Here, Plaintiffs have not clearly set forth a Fourth Amendment claim in their first amended complaint, but have presented constitutional due process claims.  It is, therefore, not clear that Plaintiffs may base their § 1983 claims on an absence of probable cause to issue the Notices of Violation.

[6]  To the extent Plaintiffs argue the Ordinance violates state law, such an argument does not support a § 1983 claim because violations of state law alone do not state a claim under § 1983. **Ebmeier v. Stump**, 70 F.3d 1012, 1013 (8th Cir. 1995).

Defendants move to dismiss these claims on the grounds the rebuttable presumption in the Ordinance is constitutional because Missouri courts have upheld rebuttable presumptions in ordinances as within municipalities' legislative powers and have found rational a presumption that a vehicle owner operated a vehicle for a traffic ordinance violation.  See, e.g., **City of St. Louis v. Cook**, 221 S.W.2d 468, 469-71 (Mo. 1949) (ordinance providing that an illegally parked vehicle is prima facie evidence that the owner "committed or authorized" the violation).  Defendants also urge that this Ordinance is constitutional because it involves a proceeding that is civil in nature.  **Shavitz**, supra (automated red light ordinance violation proceeding was a civil proceeding and was constitutional); **State v. Dahl**, 87 P.3d 650 (Or. 2004) (en banc) (noting traffic violation is civil, and upholding against due process challenges a state statute that created a rebuttable presumption that the owner is the driver of a vehicle violating the speed limit as reported through photo radar).  Defendants point to Missouri case law to support their argument that an ordinance violation proceeding in Missouri is a civil action.  See, e.g., **City of Webster Groves v. Erickson**, 789 S.W.2d 824, 826 (Mo. Ct. App. 1990).  Defendants further argue that other cases have upheld camera-enforced traffic regulations against constitutional challenges. **Agomo v. Fenty**, 916 A.2d 181 (D.C. 2007); **McNeill**, supra; **Idris**, supra; **Dahl**, supra.  In summary, Defendants argue that Plaintiffs have failed to allege a constitutional violation that is required for their § 1983 claims because the process afforded under the Ordinance is greater than the process available under other automated traffic enforcement regulations that have been upheld against constitutional challenges, because the violation

proceeding under the Ordinance is a civil proceeding, and because it is reasonable to presume a vehicle owner is driving the vehicle at the time of a red light violation.

Plaintiffs counter that the Ordinance at issue here is unconstitutional because it involves a proceeding that is criminal in nature, and violates the more stringent due process protections applicable to criminal proceedings.[7] While suggesting this Court use the analysis applied in **Shavitz**, supra, to decide whether the Red Light Camera Ordinance involves a proceeding that is civil or criminal in nature, Plaintiffs distinguish **Shavitz**, supra, because that case addressed an ordinance passed pursuant to state legislation that expressly allowed certain municipalities to adopt ordinances for the civil enforcement of traffic control violations through an automated photographic system.  **Shavitz**, 270 F. Supp. 2d at 705; **id.** at 706 (noting that "[t]he governing statute and ordinance state that violations detected by [the automated] traffic control photographic system are 'noncriminal'").  Plaintiffs also point out that the question "[w]hether a proceeding is civil or criminal for purposes of determining the proper application of federal constitutional protections is a question of federal law . . . . **Hicks [on Behalf of Feiock v. Feiock]**, 485 U.S. 624, 630 (1988)."  (Pls.' Br. in Opp'n to Defs.' Mot. to Dismiss at 8 [Doc.53].)

As noted before, the crux of Plaintiffs' claims is that the Ordinance's rebuttable presumption that the vehicle owner was driving at the time of the violation renders

---

[7] Plaintiffs also urge that, in addition to their due process claims, they present constitutional issues under the Fifth Amendment's privilege against self incrimination and the Sixth Amendment's right to confrontation.  (See, e.g., Pls.' Br. in Opp'n to Defs.' Mots. to Dismiss at 6 and 8-10 [Doc. 53].)  Because the allegations of the complaint do not clearly present constitutional issues other than due process issues, the Court will not address either the motions to dismiss or Plaintiffs' allegations in the context of the privilege against self incrimination and the right to confrontation.

unconstitutional, as violations of the due process clause, the initiation of a Notice of Violation and subsequent proceedings regarding that Notice. A presumption is analyzed differently depending on whether it is used in a criminal or a civil proceeding. For instance, in **County Court of Ulster County, N.Y. v. Allen**, 442 U.S. 140 (1979), the United States Supreme Court noted that, while the value and validity of presumptions

> under the Due Process Clause, vary from case to case, . . . in criminal cases, the ultimate test of any [presumption's] constitutional validity in a given case remains constant: the [presumption] must not undermine the factfinder's responsibility at trial, based on evidence adduced by the [prosecutor], to find the ultimate facts beyond a reasonable doubt.

**Id.** at 156. When considering presumptions in civil statutes, the Supreme Court has said that "'it is only essential that there shall be some rational connection between the fact proved and the ultimate fact presumed, and that the inference of one fact from proof of another shall not be so unreasonable as to be a purely arbitrary mandate.'" **Usery v. Turner Elkhorn Mining Co.**, 428 U.S. 1, 28 (1976) (quoting Mobile, J. & K. C. R. Co. v. Turnipseed, 219 U.S. 35, 43 (1910)). Because the constitutional due process claims here depend on whether the Ordinance violation proceedings are civil or criminal in nature, the Court will address that issue first.

"[T]he characterization of [a] proceeding and the relief given as civil or criminal in nature, for purposes of determining the proper applicability of federal constitutional protections, raises a question of federal law rather than state law." **Hicks**, 485 U.S. at 630. While a state's characterization of a proceeding and the resulting relief as civil or criminal is not determinative,

> [w]hen a State's proceedings are involved, state law provides strong guidance about whether or not the [government] is exercising its authority "in a nonpunitive, noncriminal manner," and one who challenges the [government's] classification of the relief imposed as "civil" or "criminal" may be required to show "the clearest proof" that it is not correct as a matter of federal law.

**Id.** at 631 (quoting <u>Allen v. Illinois</u>, 478 U.S. 364, 368-69 (1986)).

In resolving whether proceedings are civil or criminal in nature, the Court first ascertains "whether the legislature, 'in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for'" the civil or criminal label. **Hudson v. United States**, 522 U.S. 93, 99 (1997) (addressing double jeopardy challenge to monetary penalties and occupational debarment) (quoting <u>U.S. v. Ward</u>, 448 U.S. 242, 248 (1980)); <u>accord</u> **Smith v. Doe**, 538 U.S. 84, 92 (2003) (addressing ex post facto challenge to sex offender registration and notification requirements); **Students for Sensible Drug Policy Foundation v. Spellings**, 523 F.3d 896, 899-901 (8th Cir. 2008) (addressing double jeopardy challenge to a prohibition against federal financial assistance to students convicted of drug offenses). If the legislation indicates a preference for the civil label, then the court must determine whether the legislation is so punitive in purpose or effect that it should be considered criminal in nature. **Hudson**, 522 U.S. at 99; **Students for Sensible Drug Policy Foundation**, 523 F.3d at 901. In making that determination, the court considers the following factors in relation to the legislation on its face:

> (1) "[w]hether the sanction involves an affirmative disability or restraint"; (2) "whether it has historically been regarded as a punishment"; (3) "whether it comes into play only on a finding of scienter"; (4) "whether its operation will promote the traditional aims of punishment – retribution and deterrence"; (5) "whether the behavior to which it applies is already a crime"; (6) "whether an alternative purpose to which it may rationally be connected is assignable for

it"; and (7) "whether it appears excessive in relation to the alternative purpose assigned."

**Hudson**, 522 U.S. at 99-100 (quoting <u>Kennedy v. Mendoz-Martinez</u>, 372 U.S. 144, 168-69 (1963)); **Smith**, 538 U.S. at 97; **Students for Sensible Drug Policy Foundation**, 523 F.3d at 901. Courts may also weigh additional considerations. **Burr v. Snider**, 234 F.3d 1052, 1054 (8th Cir. 2000). Notably, "'only the clearest proof' will . . . transform what has been denominated a civil remedy into a criminal penalty." **Hudson**, 522 U.S. at 100 (quoting <u>Ward</u>, 448 U.S. at 249); **Students for Sensible Drug Policy Foundation**, 523 F.3d at 900.

This two-step, multi-factor analysis was applied to automated red light camera ordinance and statutory provisions in **Shavitz**, <u>supra</u>, and led to the conclusion the challenged statute and ordinance were civil in nature. **Shavitz**, 270 F. Supp. 2d at 713-17. All parties argue the two-step, multi-factor analysis applies here, but do not expressly address each part of the test or each of the factors in light of the Ordinance provision under which Plaintiffs were charged. While not all the red light camera cases have used this analysis when needing to ascertain the civil or criminal nature of a proceeding, <u>see</u>, <u>e.g.</u>, **Idris**, 2008 WL 182248, at *6, the Court concludes it is proper to apply it in this case.

Because the parties have not clearly focused their argument on the two parts of the test and each of the factors in light of the Red Light Camera Ordinance's provisions, and because the civil or criminal nature of that Ordinance is central to the constitutional issues in this case, which must be addressed as a question of federal law, the Court will deny the motions to dismiss to the extent they challenge the constitutionality of the Ordinance, subject

to further presentation of the parties' positions on the constitutionality of the Ordinance upon further development of the parties' arguments and the record.

Defendant ATS' Status as a State Actor for § 1983. Because ATS is not one of the Defendants named in the § 1983 claim in Count VI, this argument focuses only on the § 1983 claims in Counts III, IV, and V of the first amended complaint.

Defendant ATS moves to dismiss the § 1983 claims against it, arguing the allegation that it performed on "authority delegated by the . . . City of Arnold" (First Am. Compl. ¶ 7 [Doc.4]), is insufficient to establish it acted under color of state law. ATS further argues that, under the terms of the Ordinance, no Notice of Violation is initiated or prosecuted without decisions and actions by City officials, such as a City police officer, a City prosecutor, and a City clerk. Because the enforcement of the Ordinance challenged by Plaintiffs occurs as the result of decisions made by parties other than ATS, ATS urges it cannot be considered a state actor for purposes of Plaintiffs' § 1983 claims.

Plaintiffs counter that the allegations indicate ATS is in a scheme or conspiracy with City to generate revenue through enforcement of the terms of the Ordinance and enforcement of the Ordinance is only possible through the use of equipment provided, operated, and maintained by ATS, among other actions taken by ATS. ATS's alleged conduct, Plaintiffs urge, demonstrates that ATS is a joint participant with City in traffic enforcement, which is a traditional prerogative of government. Therefore, Plaintiffs argue, ATS's challenged conduct may be considered "under color of state law" for purposes of the § 1983 claims. Plaintiffs also contend that dismissal of ATS on this ground "would be premature" at this stage of the proceedings. (Pls.' Br. in Opp'n to Defs.' Mot. to Dismiss at 15 [Doc. 53].)

Private conduct, no matter how wrongful, is outside the reach of § 1983. **American Mfrs. Mut. Ins. Co. v. Sullivan**, 526 U.S. 40, 50 (1999); **Carlson v. Roetzel & Andress**, No. 08-1975, 2008 WL 5085104, at *1 (8th Cir. Dec. 4, 2008). To state a claim for relief under § 1983, Plaintiffs must allege "that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." **American Mfrs. Mut. Ins. Co.**, 526 U.S. at 49-50. To satisfy the color of state law element of a § 1983 claim, a private party's conduct allegedly causing the deprivation of a federal right must be "fairly attributable to the state." **Lugar v. Edmondson Oil Co.**, 457 U.S. 922, 937 (1982). This fair attribution element requires, in relevant part, that

> the party charged with the deprivation [is] a [party] who may fairly be said to be a state actor. This may be . . . because [the party charged with the deprivation] acted together with or has obtained significant aid from state officials, or because [the] conduct [of the party charged with the deprivation] is otherwise chargeable to the State.

**Id.** A private corporation may be a state actor for a § 1983 claim. See **Smith v. Insley's, Inc.**, 499 F.3d 875, 880 (8th Cir. 2007) (finding a towing company acted under color of state law in towing, storing, and selling a vehicle).

A private party may be deemed a state actor where the government delegates a function traditionally reserved to the state alone. **Reasonover v. St. Louis County, Mo.**, 447 F.3d 569, 584 (8th Cir. 2006). Such a delegation may occur through a contract arrangement. See, e.g., **West v. Atkins**, 487 U.S. 42, 54-57 (1988) (private physician contracting with a state prison to attend to the prison inmates' medical needs acted under color of state law

when providing medical treatment to an inmate); **Holloway v. Conger**, 896 F.2d 1131, 1134 (8th Cir. 1990) (noting it was undisputed that there was a delegation of statutory authority to a corporation through a contract and, therefore, the company acted under color of state law for the § 1983 suit).

A private party may also be deemed a state actor when it is "a willful participant in joint activity with the State or its agents." **Americans United for Separation of Church and State v. Prison Fellowship Ministries, Inc.**, 509 F.3d 406, 422 (8th Cir. 2007) (internal quotation marks omitted) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970)). Moreover, a private party who conspires with a state actor may act under color of state law. See **Dennis v. Sparks**, 449 U.S. 24, 29 (1980) (finding allegations that judge's official act was the result of a corrupt conspiracy involving bribery of the judge were sufficient to show conspiring private parties acted under color of state law for § 1983). When a § 1983 claim against a private party is based on allegations that the private party is a willful participant in joint action with the State or its agents, the plaintiff "must allege, at the very least, that there was a mutual understanding, or a meeting of the minds, between the private party and the state actor." **Mershon v. Beasley**, 994 F.2d 449, 451 (8th Cir. 1993); see also **Pendleton v. St. Louis County**, 178 F.3d 1007, 1011 (8th Cir. 1999).

Taking the allegations as true, Plaintiffs' allegations regarding ATS's actions under its contract with City are sufficient to demonstrate that ATS may be a state actor for purposes of the § 1983 claims against it in Counts III, IV, and V arising out of the enactment and enforcement of the Red Light Camera Ordinance, an ordinance focused on traffic regulation. Therefore, ATS's motion to dismiss the § 1983 claims because it is not a state actor is denied.

Qualified Immunity.  ATS and the individual Defendants argue they are entitled to qualified immunity.  In addressing the application of qualified immunity to this case, the parties do not specifically discuss authority addressing the application of qualified immunity to the RICO and state law claims, or explain the basis for applying it to those claims.  Therefore, the Court will deny the motions to the extent they may argue qualified immunity applies to the RICO and state law claims; and will address the parties' qualified immunity arguments in light of the § 1983 claims only.

ATS urges it is entitled to qualified immunity protection.  It is not clear that a private party is entitled to claim the protection of qualified immunity.  See, e.g., **Richardson v. McKnight**, 521 U.S. 399, 412 (1997) (prison guards employed by a private firm are not entitled to qualified immunity from a prisoner suit under § 1983); **Wyatt v. Cole**, 504 U.S. 158 (1992) (private defendants in a § 1983 action arising out of the invocation of state replevin, garnishment, and attachment statutes subsequently declared unconstitutional are not entitled to qualified immunity).  The parties have not cited precedent discussing the application of qualified immunity to a private corporation contracting with a municipality.

To ascertain whether a private party "may rely on a qualified immunity defense, the courts look to the policy considerations supporting the doctrine of qualified immunity and to the historical availability of the defense to the group to which the [private party] belongs." **Domina v. Van Pelt**, 235 F.3d 1091, 1096 (8th Cir. 2000).  Notably, "[q]ualified immunity is not a defense available to governmental entities, but only to government employees sued in their individual capacity." **Johnson v. Outboard Marine Corp.**, 172 F.3d 531, 535 (8th

Cir. 1999); accord **Bankhead v. Knickrehm**, 360 F.3d 839, 844 (8th Cir. 2004) ("[q]ualified immunity is a defense only against a claim in one's individual capacity").

The Court may recognize an immunity defense for a party to a § 1983 action when the immunity "was well established at common law" when § 1983 was enacted and "where its rationale [is] compatible with the purposes of the Civil Rights Act." **Owen v. City of Independence, Mo.**, 445 U.S. 622, 638 (1980). "But there is no tradition of immunity for municipal corporations, and neither history nor policy supports a construction of § 1983 that would justify" a qualified immunity for a city. **Id.** Thus, to the extent ATS may be considered akin to the City for purposes of Plaintiffs' § 1983 claims, ATS is not entitled to qualified immunity.

The Court finds the basis of ATS's liability under § 1983 is the same as the basis of liability of City for the § 1983 claims. As the Supreme Court has noted, "a municipality can be sued under § 1983, but it cannot be held liable unless a municipal policy or custom caused the constitutional injury." **Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit**, 507 U.S. 163, 166 (1993). Similarly, "a corporation acting under color of state law will only be held liable under § 1983 for its own unconstitutional policies." **Sanders v. Sears, Roebuck & Co.**, 984 F.2d 972, 975-76 (8th Cir. 1993). Due to the similarity in the basis of liability for a municipality and a corporation under § 1983, the Court finds that ATS, a private corporation sued under § 1983 due to its conduct under its contract with City, is in a position more like City, than City's employees, for purposes of the § 1983 claims. Under the circumstances, ATS is not entitled to claim the protection of qualified immunity from Plaintiffs' § 1983 claims.

In support of its argument, ATS cites to **Pani v. Empire Blue Cross Blue Shield**, 152 F.3d 67, 73 (2nd Cir. 1998). That case addressed "whether a Medicare carrier [wa]s entitled to official immunity for the performance of its duty to investigate and report possible fraud." **Id.** at 71. It did not address the question whether a private corporation in a § 1983 action is entitled to qualified immunity protection, or more specifically whether a private corporation which contracted with a municipality is entitled to qualified immunity from § 1983 claims arising out of the corporation's conduct under the contract. Therefore, Defendant ATS's motion to dismiss on qualified immunity grounds is denied.

The individual Defendants sued in their individual capacities under § 1983 also assert they are entitled to dismissal of those claims based on qualified immunity. Defendants Mayor and Council Members, sued in their individual capacities, are no longer subject to the § 1983 claim in Count III due to the granting of their motion to dismiss based on absolute legislative immunity. That claim remains pending against Defendant Police Chief. All other § 1983 claims remain pending against the individual Defendants sued in their individual capacities, except Defendant Police Officers, who are not sued in their individual capacities.

The individual Defendants, to the extent they are sued in their individual capacities, are entitled to claim qualified immunity protection from the § 1983 claims. To the extent the § 1983 claims pursued against Defendants Mayor and Council Members in their individual capacities are based on conduct outside of those Defendants' legislative activity, the Court may consider their claim of qualified immunity. **Hinshaw**, 436 F.3d at 1009 (noting, for a § 1983 claim, that a defendant who had absolute legislative immunity as to some challenged conduct could be protected by qualified immunity with respect to other challenged conduct).

Specifically, actions to implement or administer legislation are evaluated under qualified immunity. **Torres Rivera v. Calderon Serra,** 412 F.3d 205, 214 (1st Cir. 2005); **Morris v. Lindau**, 196 F.3d 102, 111 (2nd Cir. 1999). A police chief, sued in his individual capacity, may also claim the protection of qualified immunity with respect to challenges to his official conduct. <u>See</u>, <u>e.g.</u>, **Andrews v. City of West Branch, Iowa**, 454 F.3d 914, 918-19 (8th Cir. 2006) (discussing former police chief's qualified immunity argument in § 1983 action challenging his conduct while police chief). Such challenges are the basis of the § 1983 claims against Defendant Police Chief sued in his individual capacity.

"[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" **Pearson v. Callahan**, No. 07-751, 2009 WL 128768, at *6 (U.S. Jan. 21, 2009) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)). It "is an immunity from suit rather than a mere defense to liability." **Id.** at *6 and *10 (internal quotation marks omitted) (quoting <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985)). In its recent **Pearson** decision, the United States Supreme Court left to the discretion of the lower courts the order in which a court addresses the two steps involved in the analysis of a claim of qualified immunity. **Id.** at *13-14. Under the circumstances of this case, where the resolution of the constitutional issues depends on the civil or criminal nature of the Red Light Camera Ordinance proceedings as a matter of federal law, and the parties have been directed to address that issue further, the Court will resolve the individual Defendants' qualified immunity argument by first considering whether these individual Defendants' challenged conduct violated clearly established law.

"This inquiry turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" **Id.** at *14 (quoting Wilson v. Layne, 526 U.S. 603, 614 (1999)). Thus, the Court looks to pre-existing law to see if the alleged unlawfulness of the official's conduct was apparent at the time of the alleged conduct. For qualified immunity works to make sure that officials are on notice that their conduct is unlawful before they are subjected to suit. **Hope v. Pelzer**, 536 U.S. 730, 739 (2002). This is because "[t]he principles of qualified immunity shield an offic[ial] from personal liability when an offic[ial] reasonably believes that his or her conduct complies with the law." **Pearson**, 2009 WL 128768, at *14.

Here, Plaintiffs' § 1983 claims arise out of these Defendants' alleged conduct in implementing and enforcing the Red Light Camera Ordinance from August 2007 through February 2008. At that time the following court decisions were available: the 2003 decision in **Shavitz**, supra, upholding a city's red light camera enforcement system; the 2004 en banc decision of the Oregon Supreme Court in **Dahl**, supra, upholding a rebuttable presumption that a vehicle's registered owner was driving for purposes of a speeding ticket based on photo radar; the 2007 decision of the District of Columbia Court of Appeals in **Agomo**, supra, upholding an automated traffic enforcement system that assessed liability against a vehicle's owner unless the owner provided evidence that another person had control of the vehicle; and the January 2008 decision of the United States District Court for the Northern District of Illinois in **Idris**, supra, upholding a city's red light camera enforcement system; as well as decisions by the Missouri Supreme Court upholding ordinances stating that a vehicle's owner could be held liable when the vehicle was parked illegally, **City of Kansas City v. Hertz**

**Corp.**, 499 S.W.2d 449 (Mo. 1973) and **Cook**, supra. The individual Defendants were entitled to rely on those cases. Because the unlawfulness of the conduct of the individual Defendants, sued under § 1983 in their individual capacities, was not clearly established at the time of their challenged conduct, they are entitled to qualified immunity from Plaintiffs' § 1983 claims. The motion to dismiss filed by all Defendants except ATS will be granted on qualified immunity grounds to the extent it is directed to the individual Defendants sued under § 1983 in their individual capacities.

ATS' Alleged Responsibility for Decisions Underlying RICO and State Law Claims.

ATS moves to dismiss the RICO and state law claims against it on the ground it did not make the decisions, and did not form the requisite intent, necessary to support those claims. ATS argues the conduct challenged by Plaintiffs in those claims allegedly resulted from the initiation and pursuit of Notices of Violation of the Red Light Camera Ordinance, activities which ATS is not either allegedly or actually involved in. ATS further urges there has been no delegation of police power to ATS and its tasks are only ministerial or administrative. Plaintiffs counter that City could not have engaged in the challenged conduct without the "technology and technical assistance" provided by ATS. (Pls.' Br. in Opp'n to Defs.' Mot. to Dismiss at 21. [Doc. 53].)

The parties' briefs do not include case law supporting their positions on this argument, and do not specifically address the intent required for each of these claims and the allegations against ATS directed to that Defendant's intent. Moreover, the extent of ATS's participation in the challenged enforcement of the Ordinance requires further development of the record.

Taking the allegations as true, the Court will deny this part of ATS's motion to dismiss.

State Claims.  Because federal claims remain and the parties' arguments did not clearly address the issues as directed to the state claims themselves, the Court will not dismiss the state claims at this time.  To the extent the motions sought dismissal of the state claims, they will be denied.

Having resolved the pending motions to dismiss, the motion to stay discovery and request for oral argument will be denied as moot.

Summary of rulings.  In summary, the Court is granting the motions to dismiss in part as follows:

The federal and state claims of the Hoekstra Plaintiffs are dismissed due to lack of standing.

The RICO claims are dismissed in their entirety against Defendants City, Mayor, Council Members, and Police Officers, who are only sued in their official capacities, because, to the extent those individual Defendants are sued in their individual capacities, the RICO claims are barred by absolute legislative immunity; and because neither of the RICO claims may be pursued against either a city or a city's officials sued in their official capacities due to the inability of a city to have the intent needed for a RICO claim, the inability to recover treble damages from a city, and the fact a suit against a city official in his or her official capacity is treated as a suit against the city itself.  The RICO claims in Counts I and II are also dismissed to the extent they are pursued against Defendant Police Chief, to the extent he is sued in his official capacity, because RICO claims may not be pursued against

a city and a suit against a city official sued in his official capacity is treated as a suit against the city itself.

The § 1983 claim in Count III is dismissed against Defendants Mayor and Council Members to the extent those Defendants are sued in their individual capacities, due to those Defendants' absolute legislative immunity. The § 1983 claims in Counts IV, V and VI against Defendants Mayor and Council Members, only to the extent those Defendants are sued in their individual capacities, are dismissed, based on absolute legislative immunity and qualified immunity. All of the § 1983 claims against Defendant Police Chief, to the extent he is sued in his individual capacity, are dismissed due to qualified immunity.

Plaintiffs' requests for punitive damages in all § 1983 claims (Count III through Count VI) against City and against the individual Defendants, to the extent they are sued in their official capacities, are dismissed because cities are not liable for punitive damages and suits against city officials sued in their official capacities are treated as suits against the city itself.

Based on these rulings the following claims of Plaintiffs Timothy J. Kilper, Ran Service Co., Inc., and Christine C. Schorr (Plaintiffs) remain pending:

The RICO claims in Counts I and II, in which Plaintiffs seek treble damages and costs, including reasonable attorneys' fees, remain pending against Defendant ATS and Defendant Police Chief, only to the extent he is sued in his individual capacity.

The § 1983 claims in Counts III, IV, and V, in which Plaintiffs seek actual damages, punitive damages, costs and attorneys' fees, remain pending against Defendant ATS.

The § 1983 claims in Counts III, IV, V, and VI, only to the extent Plaintiffs seek actual damages, costs, and attorneys' fees, remain pending against Defendant City and all the individual Defendants only to the extent they are sued in their official capacities.

The state law claims in Counts VII, VIII, and IX, in which Plaintiffs seek actual damages, punitive damages, costs, and attorneys' fees remain pending against all Defendants.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant ATS's motion for leave to file supplemental memorandum in support of its motion to dismiss [Doc. 72] and all other Defendants' motion for leave to file their supplemental memorandum of law in support of their joint motion to dismiss [Doc. 75] are **DENIED**.

**IT IS FURTHER ORDERED** that the motion to dismiss filed by Defendant ATS [Doc. 37] is **GRANTED** in part and **DENIED** in part as set forth above.

**IT IS FURTHER ORDERED** that the Joint Motion to Dismiss filed by the other Defendants [Doc. 32] is **GRANTED** in part and **DENIED** in part as set forth above.

**IT IS FURTHER ORDERED** that the request for oral argument on their motion to dismiss filed by all Defendants except ATS [Doc. 39] is **DENIED** as moot.

**IT IS FURTHER ORDERED** that all Defendants' Joint Motion to Stay Discovery [Doc. 40] is **DENIED** as moot.

**IT IS FURTHER ORDERED** that the claims of Plaintiffs James W. Hoekstra and Kara L. Hoekstra are **DISMISSED**.

**IT IS FURTHER ORDERED** that the RICO claims against Defendants City, Mayor, Council Members, and Police Officers are **DISMISSED**.

**IT IS FURTHER ORDERED** that the RICO claims against Defendant Police Chief, only to the extent he is sued in his official capacity, are **DISMISSED**.

**IT IS FURTHER ORDERED** that the § 1983 claims in Counts III, IV, V, and VI against Defendants Mayor, Council Members, and Police Chief, only to the extent those Defendants are sued in their individual capacities, are **DISMISSED.**

**IT IS FINALLY ORDERED** that the requests for punitive damages in all § 1983 claims (Count III through Count VI) against City and against the individual Defendants, only to the extent they are sued in their official capacities, are **DISMISSED**.


/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE


Dated this 3rd day of February, 2009.