# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| **TIMOTHY J. KILPER,** | ) | |
| **RAN SERVICE CO., INC., and** | ) | |
| **CHRISTINE C. SCHORR,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case number 4:08cv0267 TCM** |
| | ) | |
| **CITY OF ARNOLD, MISSOURI, a** | ) | |
| **municipal corporation, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court[1] on Defendants' Joint Motion for Summary Judgment ("Joint Motion") [Doc. 94] and on a Separate Motion for Summary Judgment filed by all Defendants except American Traffic Solutions, Inc. ("ATS") ("Separate Motion") [Doc. 99]. Timothy J. Kilper, Ran Service Co., and Christine C. Schorr (Plaintiffs)[2] filed opposition to these motions; and Defendants filed replies in support of the motions. The parties have filed statements of material facts, declarations, affidavits, and exhibits in support of their positions on these motions.

By a nine count first amended complaint [Doc. 4], Plaintiffs seek damages from fifteen Defendants due to Plaintiffs' receipt of notices that they had violated (Notices of

---

[1] The case is before the undersigned United States Magistrate Judge by written consent of the parties. See 28 U.S.C. § 636(c).

[2] The Court has dismissed two other Plaintiffs, James W. Hoekstra and Kara L. Hoekstra, for lack of standing. (See Mem. and Order, filed Feb. 3, 2009, at 9-16, 41, 43 [Doc. 82].)

Violation) what is referred to as the Red Light Camera Ordinance of the City of Arnold, Missouri.[3] Defendants are: the City of Arnold (City); ATS; Mark Powell, the Mayor of the City of Arnold (Mayor); Paul Vinson, William A. Moritz, Phil Amato, Alfred Ems, Randy Crisler, John Brazeal, Joyce Deckman, and Claude Cooley, members of the City of Arnold's City Council (Council Members); Robert T. Shockey, Chief of Police of the City of Arnold (Police Chief); and Steve Musial, William Bonsack, and Jeremy Christopher, Police Officers for the City of Arnold (Police Officers).

Earlier the Court granted in part and denied in part Defendants' motions to dismiss. (Mem. and Order, filed Feb. 3, 2009 [Doc. 82].) That ruling left pending the following claims in the first amended complaint:

-- Plaintiffs' request for treble damages and costs, including reasonable attorney's fees, for alleged substantive (Count I) and conspiracy (Count II) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962 and 1964 (§§ 1962 and 1964), by ATS and Police Chief, sued in his individual capacity only (First Am. Compl. at 14-19 [Doc. 4]);

-- Plaintiffs' request for actual damages, costs, and attorneys' fees under 42 U.S.C. § 1983 (§ 1983) for alleged procedural (Count III) and substantive (Count IV) due process violations, as well as an alleged conspiracy to violate Plaintiffs' civil rights (Count V), by ATS, City, and all individual Defendants, sued in their official capacities only (id. at 19-26);

---

[3] Plaintiffs included class allegations in their first amended complaint but have not yet requested certification of a class.

--- Plaintiffs' request for an award of punitive damages under § 1983 from ATS for its alleged constitutional violations as set forth in Counts III, IV and V (id.);

-- Plaintiffs' request for actual damages, costs, and attorney's fees under § 1983 from all Defendants, except ATS and the Police Officers, for those eleven Defendants' alleged failure to train, supervise, instruct, or control others as set forth in Count VI (id. at 26-30); and

-- Plaintiffs' requests for actual damages, punitive damages, costs, and attorneys' fees from City, ATS, Police Officers sued in their official capacities only, and the ten other individual Defendants, sued in their individual and official capacities, based on state law claims for abuse of process (Count VII), fraudulent misrepresentation (Count VIII), and civil conspiracy (Count VIII) (id. at 31-37).

After that Memorandum and Order, Defendants filed answers to the first amended complaint (Docs. 86 and 87), as well as the pending motions for summary judgment (Docs. 94 and 99).

## **Background**

The undisputed material facts[4] disclose that, at the time the Notices of Violation were

_____

[4] These undisputed facts are either from the allegations in the first amended complaint (Doc. 4) to the extent they are admitted by Defendants in their Answers (Docs. 86 and 87) or from statements in Defendants' Statement of Undisputed Material Facts in Support of Defendants' Joint Motion  (Doc. 95) to the extent they are admitted by Plaintiffs (Doc. 106).

Additionally, because the Statement of Uncontroverted Material Facts in Support of the Separate Motion ("Statement") (Doc. 101) focuses on matters regarding City's insurance and Council Members' participation in certain activities, matters not necessary to the background summary, the Court will not present or consider any undisputed facts from that Statement as part of the

issued to them, Plaintiff Timothy J. Kilper was a resident of St. Louis County, Missouri; Plaintiff Ran Service Company, Inc. was a Missouri corporation with its principal place of business in St. Louis County, Missouri; and Plaintiff Christine C. Schorr was a resident of Jefferson County, Missouri. (First Am. Compl. ¶¶ 3, 4, and 5 [Doc. 4].) Defendant City of Arnold is a municipal corporation located in Jefferson County, Missouri. (Id. ¶ 6.) Defendant ATS is a Kansas corporation registered to do business in Missouri. (Id. ¶ 7.) Defendant Mark Powell is the Mayor of the City of Arnold. (Id. ¶ 8.) Defendant Council Members, Paul Vinson, Randy Crisler, William A. Moritz, John Brazeal, Phil Amato, Joyce Deckman, Claude Cooley, and Alfred Ems, have been members of the City Council of the City of Arnold, although they may not now be members of the City Council. (Id. ¶ 9.) Defendant Robert T. Shockey is the Chief of Police for the City of Arnold. (Id. ¶ 10.) Defendant Police Officers, Steve Musial, William Bonsack, and Jeremy Christopher, are police officers employed by and acting on behalf of the City; were at all relevant times acting in their official capacities; and are sued in their official capacities only. (Id. ¶ 11.)

The Red Light Camera Ordinance. In June 2005, City passed Bill No. 2102 enacting the original Ordinance 2.2 ("Red Light Camera Ordinance" or "Ordinance"),[5] which contained declarations that drivers who ran red lights caused many car crashes and numerous

_____

background, but will present them, as necessary, during the discussion of the Separate Motion.

[5] In the earlier Memorandum and Order, the Court did not discuss the original and second bills that are the basis for the Red Light Camera Ordinance because the record at that time, including the first amended complaint, contained only the codified, amended version of the Ordinance, and not the underlying original and amending bills. (See, e.g., First Am. Compl. at 5-8 and Ex. 1 [Doc. 4]). The present summary judgment record contains both the original and amending bills.

personal injuries each year; that it was impracticable for City to place police officers at each traffic signal at all times of the day to reduce these incidents; that automatic red light enforcement programs in other jurisdictions throughout the United States have been proven to significantly reduce the number of drivers who run red lights in those jurisdictions; and that vehicles are typically driven by their owners and it is therefore reasonable to assume, without evidence to the contrary, that the owner of a vehicle is driving the vehicle at a given time and place. (Defs.' Statem. Undisp. Mat. Facts Supp. Joint Mot. ¶¶ 1, 2, 3, 4, 5 and Ex. A at 1 [Doc. 95 and Doc. 95-1]; see also id. Ex. B at 3 [Doc. 95-2].)

On July 27, 2006, City amended the Red Light Camera Ordinance through approval of Bill No. 2176. (Id. ¶ 10 and Ex. D [Doc. 95 and Doc. 95-6]; see also First Am. Compl. ¶ 21 [Doc. 4].) This amendment changed Section 8,[6] the Penalty provision of Bill 2102, to add the word "fine" after the word "penalty" in two places and to state "no points will be assigned to the violators drivers [sic] license when guilty of an automated red light enforcement violation." (Defs.' Statem. Undisp. Mat. Facts Supp. Joint Mot. ¶ 10; compare id., Ex. B at 6 [Doc. 95-2] with id., Ex. D at 6 [Doc. 95-6].) Specifically, the Penalty provision in Section 8 of Bill 2102 had read:

---

[6] Although the parties do not state they agree that the amendment to the Red Light Camera Ordinance also deleted what had been Section 9, the Reporting requirement provision, the Court notes that the Reporting requirement provision is not in the Red Light Camera Ordinance as amended. (See Defs.' Statem. Undisp. Mat. Facts Supp. Joint Mot., Ex. D at 5-6 [Doc. 95-6].) That Reporting requirement provision, as set forth in the original Red Light Camera Ordinance, had stated: "Nothing in this Ordinance shall be interpreted to avoid reporting requirements under Mo. Rev. Stat. 302.225." (Id., Ex. A at 6 [Doc. 95-1].)

The penalty imposed for a finding of guilt for a violation of Section 23-173[7] using an Automated Red Light Enforcement System under this Ordinance shall be the same as the penalty for a finding of guilt for a violation of Section 23-173 where an Automated Red Light Enforcement System was not used.

(Id., Ex. B at 6 [Doc. 95-2]) (footnote added).)  After the amendment that Penalty provision reads:

The penalty (fine) imposed for a finding of guilt for a violation of Section 23-173 using an Automated Red Light Enforcement System under this Ordinance shall be the same as the penalty (fine) for a finding of guilt for a violation of Section 23-173 where an Automated Red Light Enforcement System was not used.  Except that no points will be assigned to the violators drivers [sic] license when guilty of an Automated Red Light Enforcement violation.

(Id., Ex D at 6 [Doc. 95-6]) (emphasis added to indicate language added by Bill No. 2176).)

The Red Light Camera Ordinance, as amended, is codified as City of Arnold, Missouri, Code of Ordinances ("Arnold Code"), Chapter 23, Article V, Division 2, §§ 23-181 to 23-187.  (Id.. ¶ 6 and Ex. C [Doc. 95 and Doc. 95-5 at 47-50]; First Am. Compl. ¶ 21 [Doc. 4].)  Article V of Chapter 23 of the Arnold Code is titled "Traffic-Control Signs, Signals and Devices."  (Defs.' Statem. Undisp. Mat. Facts Supp. Joint Mot. ¶ 6 and Ex. C [Doc. 95 and Doc. 95-5 at 43].)

In relevant part, the Red Light Camera Ordinance provides that installed cameras take pictures of the intersection's steady red light, a vehicle going through that red light, and the

---

[7] Section 23-173 of the City of Arnold, Missouri, Code of Ordinances (Arnold Code) states, in relevant part, that "[v]ehicular traffic facing a steady red signal alone [on a traffic-control signal] shall stop before entering the crosswalk on the near side of the intersection or, if none, then before entering the intersection and shall remain standing until a green indication is shown."  Arnold Code, Ch. 23, Art. V, Div. 1, § 23-173(a)(3)(a).  (Defs.' Statem. Undisp. Mat. Facts Supp. Joint Mot., Ex. C [Doc. 95-5 at 45].)

license plate of that vehicle; and expressly prohibits the taking of a picture of the vehicle's occupants. Arnold Code, Ch. 23, Art. V, Div. 2, § 23-181. (Id., Ex. C [Doc. 95-5 at 47]; First Am. Compl. ¶ 22 [Doc. 4].)

City's Police Department "is responsible for the enforcement and administration of" the Red Light Camera Ordinance. Arnold Code, Ch. 23, Art. V, Div. 2, § 23-184(a). (Defs.' Statem. Undisp. Mat. Facts Supp. Joint Mot., Ex. C [Doc. 95-5 at 48]; First Am. Compl. ¶ 24 [Doc. 4] .) When a violation is found, a City police officer may use specified sources to obtain additional information about the vehicle's owner that is necessary to complete the Notice of Violation ("Form 37A, Uniform Citation, as described in Missouri Supreme Court Rule 37"), and the officer completes the Notice of Violation and forwards it to City's prosecutor. Arnold Code, Ch. 23, Art. V, Div. 2, § 23-184(b). (Defs.' Statem. Undisp. Mat. Facts Supp. Joint Mot., Ex. C [Doc. 95-5 at 48]; First Am. Compl. ¶ 24 [Doc. 4].) If the City's prosecutor "on his or her information and belief, concludes that a violation of section 23-173 was committed," the prosecutor completes a section of the Notice of Violation "to create an information or complaint that charges the owner with the commission of a violation of section 23-173 and . . . file[s] the information or complaint with the municipal court." Arnold Code, Ch. 23, Art. V, Div. 2, § 23-184(c). (Defs.' Statem. Undisp. Mat. Facts Supp. Joint Mot., Ex. C [Doc. 95-5 at 48]; First Am. Compl. ¶ 24 [Doc. 4].) Once an information or complaint is filed in court, the municipal court clerk issues and then serves summons by mailing the Notice and photographs to the vehicle's owner. Arnold Code, Ch. 23, Art. V, Div. 2, § 23-184(d). (Defs.' Statem. Undisp. Mat. Facts Supp. Joint Mot., Ex. C [Doc. 95-5

at 48-49]; First Am. Compl. ¶ 24 [Doc. 4].)

Section 23-183 of the Ordinance provides that, if the City proves (1) that a motor vehicle was being operated; (2) that the operation was in violation of Section 23-173; and (3) that the defendant is the owner of the motor vehicle, then a rebuttable presumption exists that the owner of a motor vehicle was the operator of the vehicle at the time and place the violation was captured by a recorded image. Arnold Code, Ch. 23, Art. V, Div. 2, § 23-183. (Defs.' Statem. Undisp. Mat. Facts Supp. Joint Mot. ¶ 7 and Ex. C [Doc. 95 and Doc. 95-5 at 48]; First Am. Compl. ¶ 23 [Doc. 4].) The Ordinance further states that a defendant may introduce any evidence of innocence to rebut the presumption that he or she was operating the motor vehicle. Arnold Code, Ch. 23, Art. V, Div. 2, § 23-186(c). (Defs.' Statem. Undisp. Mat. Facts Supp. Joint Mot. ¶ 8 and Ex. C [Doc. 95 and Doc. 95-5 at 50]; First Am. Compl. ¶ 23 [Doc. 4].) A variety of affirmative defenses, any one of which, if proven by a preponderance of the evidence, mandates a dismissal of the charge is set forth in the Ordinance. (Defs.' Statem. Undisp. Mat. Facts Supp. Joint Mot. ¶ 9 [Doc. 95].) The nine affirmative defenses specified in the Ordinance are: (1) the traffic-control signal was not sufficiently legible; (2) the driver was acting at the direction of a police officer; (3) the driver violated the traffic-control signal to yield to an approaching emergency vehicle; (4) the vehicle was part of a funeral procession; (5) the vehicle was operated as an authorized emergency vehicle; (6) the vehicle was stolen; (7) the license plate depicted was stolen; (8) the vehicle was being operated by a person other than the owner, provided the owner submits an affidavit or testifies under oath at the municipal court proceeding to identify the actual

driver at the time of the violation; or (9) the presence of hazardous road conditions, such as ice, made compliance more dangerous than non-compliance. Arnold Code, Ch. 23, Art. V, Div. 2, § 23-186(a). (Defs.' Statem. Undisp. Mat. Facts Supp. Joint Mot. ¶ 9 and Ex. C [Doc. 95 and Doc. 95-5 at 49-50].)

As noted earlier, upon a finding of guilt for a violation under the Red Light Camera Ordinance, the Ordinance provides for the imposition of a

> penalty (fine) . . . [that is] the same as the penalty (fine) for a finding of guilt for a violation of section 23-173 where an automated red light enforcement system was not used. Except that no points will be assigned to the violators drivers [sic] license when guilty of an automated red light enforcement violation.

Arnold Code, Ch. 23, Art. V, Div. 2, § 23-187. (Id., Ex. C [Doc. 95-5 at 50]; First Am. Compl. ¶ 25 [Doc. 4].)

The motor vehicle owner has a right to a hearing before the City's municipal court and the right to appeal a finding of guilt in the Circuit Court for the 23rd Judicial Circuit pursuant to Mo. Rev. Stat. § 479.200. Arnold Code, Ch. 23, Art. V, Div. 2, § 23-185(b). (Defs.' Statem. Undisp. Mat. Facts Supp. Joint Mot. ¶ 21 and Ex. C [Doc. 95 and 95-5 at 49].) As stated in the Ordinance, "[t]he proceeding for a prosecution of a violation of section 23-173 using an automated red light enforcement system shall be conducted in the same manner as any other violation of the ordinances of the city." Arnold Code, Ch. 23, Art. V, Div. 2, § 23-185(a). (Id. ¶ 20 and Ex. C [Doc. 95 and 95-5 at 49].)

The Notices of Violation. The Notice of Violation sent to the owner of a vehicle photographed running a red light states that the owner may pay the fine online, by mail, or

in person; may request a hearing to dispute the Notice of Violation in person; or, if the owner was not operating the motor vehicle at the time the vehicle was photographed running the red light, may transfer liability to the person operating the vehicle by completing an Affidavit of Non-Responsibility in which the owner identifies the person operating the motor vehicle at the time of the alleged violation. (Id. ¶ 22 [Doc. 95]; First Am. Compl. ¶¶ 36, 37 [Doc. 4]; see also First Am. Compl. Ex. 2 [Doc. 4-1 at 6].) Each Notice of Violation also states that "payment is an admission of guilt or liability," and that "[y]our failure to appear in court at the time specified on this citation or otherwise respond to this Notice of Violation as directed may result in a warrant being issued for your arrest." (First Am. Compl. ¶¶ 31 and 32 [Doc. 4].)

In February 2008, each Plaintiff was sent a Notice of Violation reporting a violation of the Ordinance in either January or February 2008. (Defs.' Statem. Undisp. Mat. Facts Supp. Joint Mot. ¶ 24 [Doc. 95]; see also First Am. Compl. Exs. 2B, 2C, and 2D [Doc. 4-1 at 8-10].) Each of these Notices of Violation contained three images of the photographed vehicle; identified a City police officer;[8] and reported that officer had "proba[b]le cause" to believe that on a specified date at a specified intersection the relevant Plaintiff unlawfully "operate[d]/dr[o]ve" a specified vehicle, committing the offense of "Failure to Stop at a Red Light" in violation of the Ordinance. (First Am. Compl. ¶ 29 and Exs. 2B, 2C, and 2D

---

[8] Defendants Bonsack and Christopher were the officers named in the Notices of Violation sent to the three remaining Plaintiffs; Defendant Musial was the officer named in the Notices of Violation sent to the Hoekstras, whose claims have been dismissed. (See Mem. and Order, filed Feb. 3, 2009 [Doc. 82].)

[Doc. 4 and Doc. 4-1 at 8-10].)   Each of those Notices of Violation also stated "[o]n information, the City's prosecutor charges the [relevant Plaintiff] and informs the court that above facts are true and punishable by a fine of $94.50," and included the City prosecutor's electronic signature.  (Id. ¶ 33 and Exs. 2B, 2C, and 2D [Doc. 4 at 11-12 and Doc. 4-1 at 8-10].)

As of March 23, 2009, when Defendants filed their Joint Motion, Plaintiffs had not paid a fine relating to their Notices of Violation; "there ha[d] been no adjudication[s] or conviction[s] based on" the violations reflected in the Notices of Violation sent to Plaintiffs; and Plaintiffs' "matter[s were] still pending in the City's municipal court."  (Defs.' Statem. Undisp. Mat. Facts Supp. Joint Mot. ¶¶ 27, 28, 29, 31, 32, 33,35, 36, and 37 [Doc. 95].)

ATS's Involvement in the City's Red Light Camera Systems Program.  In the summer of 2005, City passed Resolution 05-59 authorizing an agreement with ATS for the installation of automated red light enforcement equipment at various intersections in the City. (Id. Exs. F and I [Doc. 95-8 at 5 and Doc. 95-11 at 2].)  City and ATS then entered into a Professional Services Agreement (Agreement), dated December 5, 2005, by which ATS agreed to install cameras and other equipment at various intersections in the City and to provide additional services.  (First Am. Compl. ¶¶ 15, 17 [Doc. 4]; Defs.' Statem. Undisp. Mat. Facts Supp. Joint Mot. ¶ 14 and Ex. H [Doc. 95 and Doc. 95-10].)  Mayor signed the Agreement on behalf of the City.  (First. Am. Compl. ¶ 16 [Doc. 4].)

By the terms of this Agreement, ATS agreed to provide traffic light cameras to the City, to install the cameras in specified locations, to maintain the cameras in good working

order, to be responsible for the operation of an automated web-based citation processing program which is linked to the cameras stationed at the intersections, to review the photographs and video from its web-based program and utilize data provided by the appropriate division of motor vehicles to determine ownership information, and then make the photographs, video, and ownership information available to a City police officer who reviews the information to determine whether a violation has occurred. (Defs.' Statem. Undisp. Mat. Facts Supp. Joint Mot. ¶¶ 15-18 and Agreement at Ex. A ¶¶ (a)(ii), (b), (d), (i), (k) and at Ex. B ¶¶ (b) and (c), Ex. H to Defs' Statem. Undisp. Mat. Facts Supp. Joint Mot. [Doc. 95 and Doc. 95-10].) Additionally, by a "Contract Change Notice 1," dated July 27, 2006, to the Agreement, ATS is required to implement, install, and maintain a method for the electronic payment of citations issued by the Arnold Police Department as a result of the red light camera systems. (First Am. Compl. ¶ 20 [Doc. 4]; see also Defs.' Statem. Undisp. Mat. Facts Supp. Joint Mot. Ex. H [Doc. 95-10 at 15-16].)

### Discussion

By their Joint Motion, Defendants seek summary judgment in their favor on all claims on the grounds the § 1983 claims fail as a matter of law because no violation of Plaintiffs' constitutional rights has occurred; the RICO claims fail as a matter of law because Defendants did not form an enterprise and did not engage in racketeering acts; and the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims. (Joint Mot. at 2 [Doc. 94].)

By their Separate Motion, all Defendants except ATS seek summary judgment in their

favor on the grounds the Police Chief, in his individual capacity, has qualified immunity from the civil RICO claims; City and the individual Defendants sued in their official capacities have sovereign immunity from the state law claims or, if not, they are entitled to judgment on the state law claims for punitive damages pursuant to Mo. Rev. Stat. § 537.610.3; the individual Defendants, to the extent they are sued in their individual capacities, have official immunity from the state law claims or, if not, have absolute immunity for their legislative conduct ; and Defendants Moritz and Vinson did not participate in the legislative conduct at issue in this case. (Defs.' Separate Mot. at 2-3 [Doc. 99].)

The Court will first address Defendants' Joint Motion, because the Separate Motion was filed for consideration "in the event that the Joint Motion does not dispose of this case in its entirety." (Separate Mot. at 1 [Doc. 99]; see also Defs.' Mem. Supp. Joint Mot. at 7 n.4 [Doc. 96] ("In the event that the Court grants this Joint Motion for Summary Judgment in its entirety, th[e Separate Motion] will be moot."))

Summary judgment standard. Rule 56(c) of the Federal Rules of Civil Procedure mandates the entry of summary judgment if all of the information before the court shows "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See **Celotex Corp. v. Catrett**, 477 U.S. 317, 322 (1986) (quotation marks omitted) (quoting Rule 56(c) of the Federal Rules of Civil Procedure). An issue of material fact is genuine if it has a real basis in the record; and, a genuine issue of fact is material if it "might affect the outcome of the suit under the governing law." **Hartnagel**

v. Norman, 953 F.2d 394, 395 (8th Cir. 1992) (quotation marks omitted) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The initial burden is on the moving party to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor.  See **Van Horn v. Best Buy Stores, L.P.,** 526 F.3d 1144, 1146 (8th Cir. 2008) ("the defendants met their initial burden of notifying the . . . court of the basis for their summary judgment motion and identifying the documents that they believed demonstrated the absence of a material fact").  After the moving party discharges this burden, the non-moving party must do more than show that there is some doubt as to the facts.  See **Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,** 475 U.S. 574, 586 (1986).  Instead, the non-moving party bears the burden of setting forth specific facts by affidavit or otherwise showing that there is a genuine issue for trial. **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 249 (1986); **Palesch v. Missouri Comm'n on Human Rights**, 233 F.3d 560, 565-66 (8th Cir. 2000).  All disputed facts are to be resolved, and all inferences are to be drawn, in favor of the non-moving party.  See **Ghane v. West,** 148 F.3d 979, 981 (8th Cir. 1998); **Kopp v. Samaritan Health Sys., Inc.**, 13 F.3d 264, 269 (8th Cir. 1993).  "[I]n order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit."  **Webb v. Lawrence County**, 144 F.3d 1131, 1135 (8th Cir. 1998).  See also **Stanback v. Best Diversified Prods., Inc.**, 180 F.3d 903, 909 (8th Cir. 1999) (finding general statements in affidavits and

depositions are insufficient to defeat a properly supported summary judgment motion).

Standing. In a footnote in their brief supporting the Joint Motion, Defendants suggest that the remaining "Plaintiffs lack standing because they have not paid their fines and, therefore, have suffered no injury in fact," citing **Shavitz v. City of High Point**, 270 F. Supp.2d 709 (M.D. N.C. 2003), vacated in part on other grounds sub nom. Shavitz v. Guilford County Bd. of Educ.,100 Fed. Appx. 146 (4th Cir. June 7, 2004) (No. 03-1960) (unpublished per curiam opinion). (Defs.' Mem. Supp. Joint Mot. at 15 n.7 [Doc. 96].)[9]

The issue of Plaintiffs' standing must be addressed before the Court considers the merits of either summary judgment motion. **City of Clarkson Valley v. Mineta**, 495 F.3d 567 (8th Cir. 2007) (remanding a case on appeal from the entry of summary judgment upon finding the district court had not sufficiently addressed standing issues that were raised first in a motion to dismiss and then in a motion for summary judgment). To establish standing a litigant first "must have suffered an 'injury in fact,' an actual or imminent concrete and particularized invasion to a legally protected interest; second, the injury must be fairly traceable to the challenged action of the defendant; and third, the injury must be redressable

---

[9] Plaintiffs have not responded to Defendants' noted challenge to Plaintiffs' standing. In their brief opposing the Joint Motion, Plaintiffs state that "[t]he Court's dismissal of the Hoekstras['] claims after it found that they lacked standing does not require the dismissal of the remaining Plaintiffs' claims because standing is a jurisdictional prerequisite. **Hodak v. City of St. Peters**, 535 F.3d 899, 903 (8th Cir. 2008)[, cert. denied, 129 S.Ct. 1352 (2009)]." (Pls.' Br. Opp'n. Joint Mot. at 21 n.5 [Doc. 107].) The Court understands this statement does not pertain to the issue whether Plaintiffs have standing to pursue the federal claims, however, because it was in Plaintiffs' discussion of the state law claims and their argument that the Court should exercise supplemental jurisdiction over those claims.

by a favorable decision." **Hodak**, 535 F.3d at 903 (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (plurality opinion)).  When a plaintiff has not suffered an injury, the plaintiff has no standing and the court lacks jurisdiction to consider the plaintiff's claims. **International Ass'n of Fire Fighters, Local 2665 v. City of Clayton**, 320 F.3d 849, 850 (8th Cir. 2003).  The party invoking federal jurisdiction bears the burden of establishing standing.  **Lujan v. Defenders of Wildlife**, 504 U.S. 555, 561 (1992) (plurality opinion); **Mineta**, 495 F.3d at 570.

While standing is a jurisdictional prerequisite to suit, it may arise and be addressed at various stages of the lawsuit.  See **Gray v. City of Valley Park**, 567 F.3d 976, 982-87 (8th Cir. 2009) (finding the appellants, who were the plaintiffs and who challenged for the first time on appeal their own standing, had standing to challenge a city's ordinance); **Nolles v. State Comm. for Reorg. of Sch. Dists.,** 524 F.3d 892, 897-901, 905 (8th Cir.) (sua sponte dismissing appeal of procedural and substantive due process claims on standing grounds, and affirming district court's dismissal of another claim), cert. denied, 129 S.Ct. 418 (2008); **Medalie v. Bayer Corp.**, 510 F.3d 828, 830 (8th Cir. 2007) (concluding that, by failing to file an expert's report regarding the plaintiff's personal injuries as directed by the district court, the plaintiff failed to satisfy the evidentiary burden necessary to show standing during the discovery stage of litigation); **Mineta**, supra; **Harmon v. City of Kansas City, Mo.**, 197 F.3d 321, 327 (8th Cir. 1999) (noting "A federal court bears the burden of examining standing at all stages of litigation, even if the parties do not raise the issue themselves" and

vacating the district court's injunctive order, but not the district court's damages award, on standing grounds).  The manner and degree of evidence needed to support standing changes depending on the stage of the litigation at which the issue is addressed.  **Lujan**, 504 U.S. at 561.  While

> [a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, . . . [i]n response to a summary judgment motion, . . . the plaintiff can no longer rest on such "mere allegations," but must "set forth" by affidavit or other evidence "specific facts,"which for purposes of the summary judgment motion will be taken to be true.

**Id.** (citations omitted).  At the summary judgment stage, standing requires "a factual showing of perceptible harm."  **Id.** at 566; **Eckles v. City of Corydon**, 341 F.3d 762, 767 (8th Cir. 2003).

Here, Defendants first raised a challenge to Plaintiffs' standing in Defendants' earlier motions to dismiss.  Based on the allegations of the first amended complaint, the Court granted the motions to dismiss on standing grounds to the extent Defendants challenged the standing of two of the then-named Plaintiffs, and denied the motions to dismiss on standing grounds to the extent Defendants challenged the standing of the other three Plaintiffs, who are the Plaintiffs remaining before the Court.  (Mem. and Order at 9-16, filed Feb. 3, 2009 [Doc. 82].)  Specifically, with respect to the injury-in-fact requirement for standing, this Court concluded that the three remaining Plaintiffs' "allegations that they have had to defend the Notices [of Violation] . . . suggest that those Plaintiffs have suffered an injury sufficient for standing purposes at this stage of the proceedings."  (Mem. and Order at 13, filed Feb.

3, 2009 [Doc. 82].)  Based on the allegations that the three remaining Plaintiffs were defending the Notices of Violation and the absence of allegations regarding the resolution of those Plaintiffs' Notices of Violation, the Court distinguished **Shavitz**, supra, and concluded those Plaintiffs had standing to pursue their federal claims at that stage of the proceedings.  (Mem. and Order at 13-16, filed Feb. 3, 2009 [Doc. 82].)

Now that Plaintiffs' standing is  raised at the summary judgment stage, the Court finds it proper to consider Plaintiffs' standing in light of the record beyond the allegations of the first amended complaint.  **Lujan**, 504 U.S. at 561.  Therefore, the Court will consider whether Plaintiffs have satisfied their burden of making a factual showing of perceptible harm sufficient to demonstrate their standing to pursue the § 1983 and RICO claims.

"The essential elements of a § 1983 claim are (1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." **Schmidt v. City of Bella Villa**, 557 F.3d 564, 571 (8th Cir. 2009) (alteration in original).  In relevant part, Plaintiffs allege Defendants' enactment and enforcement of the Red Light Camera Ordinance violate Plaintiffs' constitutional rights to procedural and substantive due process causing Plaintiffs to be "charged with and forced to defend a red light violation issued pursuant to a red light camera[; to] suffer[] embarrassment, humiliation, and inconvenience[, and to be] forced to hire attorneys and expend money for attorneys' fees and costs," entitling Plaintiffs to actual damages, attorneys' fees, and costs.  (First Am. Compl. at 19-30 and ¶¶ 74, 79, 86, and 98

18

[Doc. 4].)

When challenging the constitutionality of a legislative act or the application of the act, a plaintiff has standing if the act or its application results in or threatens a direct injury to the plaintiff that is fairly traceable to the defendant's conduct and that is real, immediate, and specific. **Eckles**, 341 F.3d at 767-68 (standing to seek damages and equitable relief in an action presenting a constitutional challenge to a nuisance abatement ordinance); accord **International Ass'n of Fire Fighters, Local 2665**, 320 F.3d at 850 (standing to challenge an "ordinance as applied is present when the challenger has experienced a direct injury or will soon sustain a direct injury redressable by the court" (internal quotation marks omitted) (quoting **Harmon**, 197 F.3d at 326)); **Harmon**, 197 F.3d at 326-27 (standing to seek damages, but not injunctive relief, in an action against a city presenting a constitutional challenge to an ordinance regulating advertisements and sales of certain items on city streets and sidewalks).

The undisputed record reveals that Plaintiffs' "matter[s are] still pending in the City's municipal court," Plaintiffs have not paid a fine relating to the Notices of Violation they had received, and "there have been no adjudication[s] or conviction[s] based on" the violations reflected in the Notices sent to Plaintiffs. (Defs.' Statem. Undisp. Mat. Facts Supp. Joint Mot. ¶¶ 27, 28, 29, 31, 32, 33,35, 36, and 37 [Doc. 95].) The fact that the proceedings are still pending in municipal court indicates that Plaintiffs are still subject to the provisions of the Red Light Camera Ordinance and may soon be subject to a fine or other sanction for their

alleged violations of that Ordinance. Nothing of record indicates that Plaintiffs have failed to do what they need to do to pursue their positions in the municipal court proceedings. Therefore, Plaintiffs have made a factual showing of "perceptible harm," **Lujan**, 504 U.S. at 566, for purposes of standing to pursue the § 1983 damages claims. See **Eckles**, 341 F.3d at 768 (finding the plaintiff's receipt of an abatement notice from the city was sufficient to confer standing to pursue a constitutional challenge to that notice); accord **Harmon**, supra (in a § 1983 damages action, a plaintiff who was arrested under an ordinance and another plaintiff who had been threatened with arrest and harassed under the ordinance, had standing to challenge the constitutionality of the ordinance); **Sevin v. Parish of Jefferson**, No. 08-802, 2008 WL 5273718, at *8-11 (E.D. La. Dec. 16, 2008) ("**Sevin I**") (finding a plaintiff who had received four notices that he had violated an automated red light camera, two of which he did nothing about and two of which he requested a hearing on, had standing to pursue constitutional challenges under § 1983). Using the words of the United States Court of Appeals for the Eighth Circuit upholding the standing of a landowner who was challenging notices of abatement he had received from a city, this Court concludes Plaintiffs have standing to pursue their § 1983 claims because:

> [t]he . . . [N]otice[s of violation are] in effect, and if the suit is dismissed [Plaintiffs] could expect the City to enforce the [N]otice[s of Violation]. Moreover, there is nothing to prevent the City from enforcing [the Notices of Violation] immediately if it so chose. The threat of injury to [Plaintiffs] is imminent and concrete. . . . The concrete and particular harm that [Plaintiffs] will suffer is . . . spelled out in the City's [N]otice[s of Violation]. . . . [Plaintiffs] stand[] to suffer direct . . . injury should [they] choose to ignore the demands of the [N]otice[s of Violation]. It is not necessary that [Plaintiffs]

wait until the City actually enforces the [N]otice[s of Violation] to bring suit challenging the City's actions as long as those actions are imminent and not speculative. The City's planned actions are not merely speculative . . . .

**Eckles**, 341 F.3d at 768 (footnote and citation omitted).

Defendants' reliance on **Shavitz** to argue Plaintiffs lack standing is not persuasive. There, the court concluded the plaintiff lacked standing to pursue procedural due process challenges to an automated red light ordinance upon finding the plaintiff had refused to pay the citation he received, had not appealed from the notice of failure to comply that he subsequently received, and, therefore, "ha[d] not availed himself of the process" provided by the defendants. **Shavitz**, 270 F. Supp. 2d at 707, 710-11. <u>Accord</u> **Williams v. Redflex Traffic Sys., Inc.,** No. 3:06-cv-400, 2008 WL 782540, at *4 (E.D. Tenn. Mar. 20, 2008) (a plaintiff, who received a citation under a red light camera ordinance and did not seek a court hearing, did not suffer "a concrete and particularized injury as a result of the allegedly deficient process and therefore ha[d] no standing to challenge it"); <u>but</u> <u>see</u> **Sevin I**, 2008 WL 5273718, at *8-11 (plaintiff who had received four notices of violating a red light camera ordinance had standing based on all four violations even though he requested a hearing on only two of the notices because "it is beyond dispute that [this plaintiff] is an 'object of' defendants' allegedly unconstitutional ticketing and enforcement procedures") (quoting <u>Lujan</u>, 504 U.S. at 561)). Here, the available undisputed record indicates that Plaintiffs have availed themselves of the process available, but the proceedings on Plaintiffs' Notices are not yet resolved. There is no indication that the present, unresolved status of Plaintiffs'

municipal court proceedings is due to actions taken by Plaintiffs themselves. Therefore, **Shavitz** is distinguishable.

While not expressly addressed by the parties, the Court also finds Plaintiffs have standing to pursue some of their RICO claims at this stage of the proceedings. "RICO provides a private right of action for any person 'injured in his business or property by reason of a violation of' its substantive prohibitions. 18 U.S.C. § 1964(c)." **Dahlgren v. First Nat'l Bank of Holdrege**, 533 F.3d 681, 689 (8th Cir. 2008), <u>cert. denied</u>, 129 S.Ct. 1041 (2009). A plaintiff has standing to pursue RICO claims when, in relevant part, the plaintiff has suffered injury to the plaintiff's "business or property" due to RICO violations. **Sedima, S.P.R.L. v. Imrex Co.,** 473 U.S. 479, 496 (1985) ("the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation"); **Hamm v. Rhone-Poulenc Rorer Pharms, Inc.**, 187 F.3d 941, 954 (8th Cir. 1999) (plaintiffs who did not show injury to "business or property" within the meaning of § 1964(c), but only damage to their reputation, lacked standing to pursue RICO civil claims). Here, for their RICO claims, Plaintiffs allege in relevant part that they are "injured in their property [in that] Plaintiff[s] have suffered embarrassment, humiliation, and inconvenience as well as being forced to hire attorneys and expend money for attorneys' fees and costs." (First Am. Compl. ¶¶ 59 and 65 [Doc. 4].)

To the extent Plaintiff allege they have suffered embarrassment, humiliation, and inconvenience, Plaintiffs lack standing to pursue their RICO claims, as such injuries are more

akin to personal injuries than to injuries to "business or property." Cf. **Regions Bank v. J. R. Oil Co.**, 387 F.3d 721, 728-29 (8th Cir. 2004) (a showing of injury for a civil RICO claim "'requires proof of concrete financial loss, and not mere injury to a valuable intangible property interest'" (quoting Steele v. Hospital Corp. of Am., 36 F.3d 69, 70 (9th Cir. 1994)); **Hamm**, 187 F.3d at 954 ("[d]amage to reputation is generally considered personal injury and thus is not injury to 'business or property' within the meaning of 18 U.S.C. § 1964(c)").

"[M]oney . . . is a form of property," **Reiter v. Sonotone Corp.**, 442 U.S. 330, 338 (1979) (interpreting "business or property" in a consumer's antitrust case), however, and monetary losses or expenditures related to court proceedings before the RICO litigation may satisfy the "business or property" requirement for civil RICO claims. See **Handeen v. Lemaire,** 112 F.3d 1339, 1354 (8th Cir. 1997) (plaintiff had standing to pursue a RICO claim to recover attorneys' fees the plaintiff incurred in objecting to the defendants' allegedly fraudulent claims in bankruptcy).

Therefore, Plaintiffs have satisfied their burden to show perceptible harm for purposes of standing to pursue their civil RICO claims, but only to the extent they may have expended money for attorneys' fees and costs related to the defense of the Notices of Violation, and not to the extent they allege they have suffered embarrassment, humiliation, and inconvenience.

§ 1983 Claims. Defendants move for the entry of summary judgment in their favor on the § 1983 claims on the grounds no violation of Plaintiffs' federal constitutional rights has occurred.

For their § 1983 claims, Plaintiffs must establish "that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." **American Mfrs. Mut. Ins. Co. v. Sullivan**, 526 U.S. 40, 49-50 (1999); accord **Schmidt**, 557 F.3d at 571.

All of Plaintiffs' § 1983 claims are based on allegations that the Red Light Camera Ordinance violates the federal due process clause in that the rebuttable presumption in the Ordinance both shifts the burden of proof to the vehicle owner to establish he or she was not driving at the time of the violation and, through the use of an irrational inference to establish a prima facie case, allows City to meet its burden of proof without sufficient evidence establishing that the vehicle owner was driving at the time of the violation; and in that the Ordinance permits proof of liability without proof beyond a reasonable doubt.[10] (See, e.g., First Am. Compl. ¶¶ 69-72, 78(b), 78(f), 82(c), and 89(d) [Doc. 4].) The claims regarding

---

[10] Plaintiffs also allege the Red Light Camera Ordinance violates the federal due process clause in that it allows the issuance of a citation in the absence of probable cause to believe the vehicle owner was the driver at the time of the violation. (See e.g., First Am. Compl. ¶ 78(b) [Doc. 4].) Earlier, the Court pointed out that the alleged absence of probable cause may be a Fourth Amendment issue, rather than a substantive due process issue, based on the plurality in **Albright v. Oliver,** 510 U.S. 266 (1994) (plurality opinion) (there is no substantive due process right, but there may be a Fourth Amendment right, arising from malicious prosecution due to the absence of probable cause). (Mem. and Order, filed Feb. 3, 2009, at 25 n.5 [Doc. 82].) The Court further noted Plaintiffs may not base their §1983 claims on an absence of probable cause to issue the Notices of Violation because Plaintiffs have not clearly set forth a Fourth Amendment claim in their first amended complaint. (Id.) The first amended complaint has not been amended. Therefore, the Court will not further consider the lack of probable cause allegations.

Additionally, to the extent Plaintiffs base their § 1983 claims on allegations and arguments that the Ordinance violates state law, those allegations and arguments are not dispositive, and will not be considered further, because violations of state law do not state a claim under § 1983. **Doe v. Gooden,** 214 F.3d 952, 955 (8th Cir. 2000).

the absence of proof beyond a reasonable doubt arise out of the use of the Ordinance's rebuttable presumption to establish that the vehicle owner was the driver of the vehicle at the time of the Ordinance violation. Therefore, all of Plaintiff's constitutional due process claims arise out of the Ordinance's rebuttable presumption that the vehicle owner drove the vehicle at the time of the Violation incident.

In essence, the parties' positions on whether or not Plaintiffs' federal due process rights were violated depend upon whether the Ordinance violation proceeding is characterized as civil or criminal in nature. Plaintiffs' due process claims rely on their position that the Ordinance is criminal in nature, and Defendants counter that the Ordinance is civil in nature. In its earlier ruling, the Court suggested the parties further develop the record and their positions on the constitutionality of the Ordinance, including its civil or criminal nature. (Mem. and Order, filed Feb. 3, 2009, at 31 [Doc. 82].) The parties have done this through the Joint Motion and response. If the Court finds the Ordinance civil in nature, Defendants are entitled as a matter of law to entry of summary judgment in their favor on Plaintiffs' § 1983 damages claims because those claims are based on Plaintiffs' position the Ordinance is criminal in nature. If the Court finds the Ordinance criminal in nature, then the Court must ascertain whether Defendants are entitled to summary judgment on the § 1983 claims either as a matter of law or because there exists no genuine issue of material fact regarding the enactment and enforcement of the Ordinance and Plaintiffs' due process challenges.

"[T]he characterization of [a] proceeding and the relief given as civil or criminal in

nature, for purposes of determining the proper applicability of federal constitutional protections, raises a question of federal law rather than state law." **Hicks on behalf of Feiock v. Feiock**, 485 U.S. 624, 630 (1988). The issue whether a particular punishment or proceeding is criminal or civil is first a matter of statutory construction. **Smith v. Doe**, 538 U.S. 84, 92 (2003) (addressing ex post facto challenge to sex offender registration and notification law); **Hudson v. United States**, 522 U.S. 93, 99 (1997) (addressing double jeopardy challenge to imposition of monetary penalties and occupational debarment); **Kansas v. Hendricks,** 521 U.S. 346, 361 (1997) (addressing double jeopardy and ex post facto challenges to sexually violent predator civil commitment proceeding); **Allen v. Illinois**, 478 U.S. 364, 368 (1986) (addressing privilege against self-incrimination challenge to sexually dangerous persons civil commitment proceeding).

At the outset, in resolving whether proceedings are civil or criminal in nature, the Court ascertains "whether the legislature meant the [legislation] to establish 'civil' proceedings." **Hendricks**, 521 U.S. at 361; **Doe v. Miller**, 405 F.3d 700, 718 (8th Cir. 2005) (constitutional challenges to residence restrictions on sex offenders); see also **Allen**, 478 U.S. at 368 (finding initially that the state had expressly provided that proceedings under the challenged statute were civil in nature indicating the state's intent "to proceed in a nonpunitive, noncriminal manner" under the challenged statute). Similarly, in resolving whether a penalty is civil or criminal in nature, the Court must determine "whether the legislature, 'in establishing the penalizing mechanism, indicated either expressly or impliedly

a preference for'" the civil or criminal label. **Hudson**, 522 U.S. at 99 (quoting U.S. v. Ward, 448 U.S. 242, 248 (1980)); accord **Smith**, 538 U.S. at 93 (quoting Hudson, 522 U.S. at 99); **Students for Sensible Drug Policy Found. v. Spellings**, 523 F.3d 896, 900 (8th Cir. 2008) (quoting Hudson, 522 U.S. at 99) (addressing double jeopardy challenge to legislation providing for the suspension of federal financial assistance to students convicted of drug offenses).

The legislature's intent to create a civil proceeding or penalty may be ascertained either from the express language of the legislation, see **Allen**, 478 U.S. at 368, or from other aspects of the legislation, see, e.g., **Hudson**, 522 U.S. at 103 (finding a debarment sanction was intended to be civil in nature, even in the absence of express language "denominating the sanction as civil," because an administrative agency had the authority to issue the debarment order). To ascertain legislative intent, the Court may consider the purpose or objective of the legislation, the manner of its codification, and the enforcement procedures it establishes. **Smith**, 538 U.S. at 93-94.

Having considered the Ordinance, the Court concludes the City intended it to be civil in nature, despite the absence of language explicitly expressing that intent. First, the location of this Ordinance in the Arnold Code indicates an intent that the Ordinance is civil in nature. The Ordinance is not in Chapter 17 of the Arnold Code, the chapter titled "Offenses," in which the City expressly specifies acts constituting crimes. (See, e.g., §17-8 of the Arnold Code, "the crime of harassment"; § 17-11(a) of the Arnold Code, "the crime of endangering

the welfare of a child"; § 17-13 of the Arnold Code, "the crime of leaving a mentally- or physically- challenged individual of any age unattended in a motor vehicle"; § 17-19(a) of the Arnold Code, "the crime of assault"; and § 17-20 of the Arnold Code, "the crime of peace disturbance." (Ex. C of Defs.' Statem. Undisp. Mat. Facts Supp. Joint Mot. at 17, 19-20, and 21 [Doc. 95-3].) Instead, the Ordinance is part of Chapter 23 of the Arnold Code, the chapter for "Traffic" ordinances, and, more specifically, part of Article V of that chapter, which is titled "Traffic-Control Signs, Signals and Devices." (Id. Ex. C at 47-50 [Doc. 95-5].) The placement of the Ordinance outside the chapter containing the ordinance provisions the City explicitly characterizes as criminal in nature indicates the City intended that the Red Light Camera Ordinance proceedings and penalty are civil in nature. See, e.g., **Hendricks**, 521 U.S. at 361 (noting a state legislature's "objective to create a civil proceeding [wa]s evidenced [in part] by its placement of the [legislation] within the [state] probate code, instead of the [state] criminal code"). This determination that the City intended the Ordinance to be civil in nature is also supported by the absence of the word "crime" and its derivations in the Ordinance's provisions.

Furthermore, the 2006 amendment of the Ordinance's penalty provision indicates an intention not to impose criminal penalties for violations of the Ordinance. Prior to the amendment, the Ordinance's penalty provision stated that the penalty imposed for a violation of § 23-173, running a red light, was the same whether or not a red light camera was used. (§ 8 of Bill No. 2102, Defs.' Statem. Undisp. Mat. Facts Supp. Joint Mot., Ex. A at 6 [Doc. 95-1].) The parties have not clearly indicated what the penalty for a red light violation

enforced without a camera was at the time of the Ordinance's amendment. Assuming the Code's general penalty provision, § 1-16 of the Code, applied to a red light violation of § 23-173 not enforced through a camera, such a violation might have been penalized with a fine of not more than $1,000, imprisonment for up to one year, or both, the penalties specified in § 1-16. (Id., Ex. C at 13-14 [Doc. 95-3].) Therefore, prior to the 2006 amendment of the Red Light Camera Ordinance, the Ordinance's language may have allowed the imposition of a term of imprisonment as well as a fine or both. With the 2006 amendment, "(fine)" was added after the word "penalty" in the Ordinance's penalty provision, § 23-187, indicating an intent to limit to a fine the penalty for a violation of § 23-173 enforced through the use of a red light camera. (Id., Ex. C at 50 [Doc. 95-5] and Ex. D at 6 [Doc. 95-6].) With this amendment, the Ordinance provides a specific penalty, a fine, so that the Arnold Code's generally applicable penalty provision, § 1-16, does not apply to red light camera violations.

Without setting forth an explanation for the addition of "(fine)" in the Ordinance's penalty provision or providing alternative meanings for the amended sentence, Plaintiffs urge that this amendment of the penalty provision is vague and ambiguous.[11] The Court disagrees.

---

[11] Plaintiffs urge the penalty provision is ambiguous and vague due to the City's own actions in that the fine imposed for a red light violation enforced by a camera is not the same as a fine for a red light violation enforced without a camera. (Pls.' Br. Opp'n. Defs.' Joint Mot. at 5 [Doc. 107].) Specifically, Plaintiffs point to the City's Traffic Violation Schedule of Fines and Costs, effective June 7, 2007, which reports that the fine for an "Electric Signal/Stop Sign" violation is "$75.50+$24.50 = $100.00" (Pls.' Statem. Disp. Mat. Facts Opp'n. Defs.' Joint Mot, Additional Mat. Facts Necessary to Resolve Summ. J., Ex. 8 at 1 [Doc. 106-1 at 24]) and to the Notices of Violation received by Plaintiffs, which each assess a fine of $94.50 for violating a red light enforced by a camera (First Am. Compl., Exs. 2-B, 2-C, and 2-D [Doc. 4]). To the extent the Court should consider this information, which goes beyond the Ordinance's language and is not clearly undisputed, it does not create a genuine issue of material fact, whether the difference in the fines is $5.50 or $21.50, because the

29

The added language clearly limits the Red Light Camera Ordinance penalty to a fine; otherwise there was no need to add "(fine)" after the word "penalty" in § 23-187.

Despite Plaintiffs' argument to the contrary, the penalty in § 1-16 of the Arnold Code, which contains a term of imprisonment as a potential penalty, does not apply to a Red Light Camera Ordinance violation. This is because § 1-16 of the Arnold Code is expressly limited to providing a penalty for a Code violation "where no specific penalty is provided" (id., Ex. C at 13-14 [Doc. 95-3]) and § 23-187 of the Red Light Camera Ordinance now provides a specific penalty of a fine and no assessment of points on red light camera violators' driver's licenses (id., Ex. C at 50 [Doc. 95-5]).

If, as here, the legislation indicates a preference for the civil label, then the court must determine whether the legislation is so punitive in purpose or effect that the proceeding or penalty should be considered criminal in nature. **Smith**, 538 U.S. at 92; **Hudson**, 522 U.S. at 99; **Hendricks**, 521 U.S. at 361; **Allen**, 478 U.S. at 369; **Students for Sensible Drug Policy Found.,** 523 F.3d at 900; **Miller**, 405 F.3d at 718. In making that determination, the court considers the following factors in relation to the legislation on its face:

> (1) "[w]hether the sanction involves an affirmative disability or restraint"; (2) "whether it has historically been regarded as a punishment"; (3) "whether it comes into play only on a finding of scienter"; (4) "whether its operation will promote the traditional aims of punishment – retribution and deterrence"; (5) "whether the behavior to which it applies is already a crime"; (6) "whether an

difference in fines is minimal. To the extent this minimal discrepancy exists in the fines assessed for red light violations enforced with a camera and red light violations enforced without a camera, such a discrepancy may be a matter of local law, but is not a matter of federal constitutional law or the proper subject of a § 1983 claim.

alternative purpose to which it may rationally be connected is assignable for it"; and (7) "whether it appears excessive in relation to the alternative purpose assigned."

**Hudson**, 522 U.S. at 99-100 (quoting Kennedy v. Mendoz-Martinez, 372 U.S. 144, 168-69 (1963)); **Students for Sensible Drug Policy Found.**, 523 F.3d at 901 (quoting Hudson, 522 U.S. at 99-100); see **Smith**, 538 U.S. at 97 (finding relevant five of the factors in Kennedy, 372 U.S. at 168-69); **Miller**, 405 F.3d at 719 (same). Courts may also weigh additional considerations. **Burr v. Snider**, 234 F.3d 1052, 1054 (8th Cir. 2000). Notably, "'only the clearest proof'" will override legislative intent and transform into criminal what was intended to be civil. **Hudson**, 522 U.S. at 100 (quoting Ward, 448 U.S. at 249); accord **Smith**, 538 U.S. at 92; **Hendricks**, 521 U.S. at 361; **Allen**, 478 U.S. at 369; **Students for Sensible Drug Policy Found.**, 523 F.3d at 900; **Miller,** 405 F.3d at 718. Having considered these factors, the Court concludes there is not either the "clearest proof" or the existence of a genuine issue of material fact indicating that the Red Light Camera Ordinance is criminal in nature.

First, the Ordinance's sanction, a fine, does not involve an affirmative disability or restraint. This factor requires an inquiry into "how the effects of the [legislation] are felt by those subject to it. If the disability or restraint is minor and indirect, its effects are unlikely to be punitive." **Smith**, 538 U.S. at 99-100. Moreover, when legislation "imposes no physical restraint, [it] does not resemble the punishment of imprisonment, which is the paradigmatic affirmative disability or restraint." **Id.** at 100. Monetary sanctions do not involve an affirmative disability or restraint. **Hudson**, 522 U.S. at 104 (imposition of

monetary sanctions and debarment do not involve an affirmative disability or restraint); **Students for Sensible Drug Policy Found.**, 523 F.3d at 901 (suspension of federal aid to students convicted of drug offenses "does not involve an affirmative disability or restraint"). Here, the only penalty available for a Red Light Camera Ordinance violation is monetary, the imposition of a fine, which does not involve an affirmative disability or restraint. This factor supports the determination that the Ordinance and its penalty are civil in nature.

Next, the Court considers whether the sanction has been regarded historically as punishment. **Hudson**, 522 U.S. at 99. Monetary penalties are not "historically . . . viewed as punishment." **Id.** at 104; but see **Harmelin v. Michigan**, 501 U.S. 957, 978 n.9 (1991) (plurality opinion) (characterizing "disproportionate fines" as "certainly punishments"). Rather, "the payment of fixed or variable sums of money [is a] sanction[] which ha[s] been recognized as enforceable by civil proceedings since . . . 1789." **Helvering v. Mitchell**, 303 U.S. 391, 400 (1938); accord **Hudson**, 522 U.S. at 104 (quoting Helvering, 303 U.S. at 400). As noted above, the only penalty available for a Red Light Camera Ordinance violation is the imposition of a fine, which requires the payment of money. Such a monetary penalty is not deemed a punishment. Therefore, this factor supports a determination that the Ordinance and its sanction are civil in nature.

The third factor asks whether the sanction only comes into play on a finding of scienter. **Hudson**, 522 U.S. at 99. "The existence of a scienter requirement is customarily an important element in distinguishing criminal from civil statutes." **Hendricks**, 521 U.S.

at 362.  When there is no scienter requirement, it is evidence that the penalty is not intended to be retributive.  **Id.**; **Students for Sensible Drug Policy Found.**, 523 F.3d at 901.  The parties agree that a violation of the Red Light Camera Ordinance does not require scienter. (Defs.' Mem. Supp. Joint Mot. at 12 [Doc. 96]; Pls.' Br. Opp'n. Joint Mot. at 7 [Doc. 107].) Because the Ordinance's sanction does not come into play only on a finding of scienter, this third factor further supports a determination that the Ordinance and its penalty are not criminal in nature.

The fourth factor is whether the sanction "will promote the traditional aims of punishment – retribution and deterrence." **Hudson**, 522 U.S. at 99 (internal quotation marks omitted) (quoting Kennedy, 372 U.S. at 168).  As noted above, the lack of a scienter requirement "'is evidence that . . . the [legislation] is not intended to be retributive.'" **Students for Sensible Drug Policy Found.**, 523 F.3d at 901 (quoting Hendricks, 521 U.S. at 361).  The parties urge that fines have a deterrent effect.  (Defs.' Mem. Supp. Joint Mot. at 13 [Doc. 96]; Pls.' Br. Opp'n. Joint Mot. at 7 [Doc. 107].)  While the deterrent aspect of fines may be apparent, "the mere presence of [a deterrent] purpose is insufficient to render a sanction criminal, as deterrence 'may serve civil as well as criminal goals.'" **Hudson**, 522 U.S. at 105 (quoting U. S. v. Ursery, 518 U.S. 267, 292 (1996); **Students for Sensible Drug Policy Found.,** 523 F.3d at 901 (quoting Hudson, 522 U.S. at 105).  As the Supreme Court has noted, "[a]ny number of governmental programs might deter crime without imposing punishment." **Smith**, 538 U.S. at 102.  Without more, this factor weighs in favor of a finding

that the Ordinance and its penalty are civil in nature.

The fifth factor the Court may consider is "whether the behavior to which [the penalty] applies is already a crime." **Hudson**, 522 U.S. at 99 (internal quotation marks omitted) (quoting <u>Kennedy</u>, 372 U.S. at 168). Assuming that the violation of a red light is criminal, the fact that conduct for which the Ordinance's penalty is imposed "may also be criminal . . . is insufficient to render the money penalties . . . criminally punitive . . . ." **Id.** at 105; **Students for Sensible Drug Policy Found.**, 523 F.3d at 901 (quoting <u>Hudson</u>, 522 U.S. at 105); <u>cf.</u> **Hendricks**, 521 U.S. at 362 ("the fact that the [legislation] may be 'tied to criminal activity' is 'insufficient to render the [legislation] punitive. . . . <u>Ursery</u>, 518 U.S. . . . [at 292]"). Without more, this factor weighs in favor of a finding that the Ordinance and its penalty are civil in nature.

The sixth factor is "whether an alternative purpose to which it may rationally be connected is assignable for it." **Hudson,** 522 U.S. at 99 (quotation marks omitted) (quoting <u>Kennedy</u>, 372 U.S. at 168-69). This "is a '[m]ost significant' factor in [the] determination that the [legislation]'s effects are not punitive." **Smith**, 538 U.S. at 102 (first alteration in original) (quoting <u>Ursery</u>, 518 U.S. at 290). Importantly, public safety is a "legitimate nonpunitive purpose." **Id.** at 102-03.

Here, as the parties agreed, the City decided to implement a safety program designed to reduce the number of drivers running red lights "[i]n the interests of the public health, safety, and welfare of its citizens." (Defs.' Statem. Undisp. Mat. Facts ¶ 5 [Doc. 95].) More

specifically, the bills enacting the Red Light Camera Ordinance declare that the City determined that cars violating red lights "damage[] the public by endangering vehicle operators and pedestrians alike, by decreasing the efficiency of the traffic control and traffic flow efforts, and by increasing the number of serious accidents to which public safety agencies must respond at the expense of the taxpayers"; are "the cause of many vehicle collisions and numerous personal injuries each year in the City"; and "present a grave and serious risk to the health, safety, and welfare of the citizens of the City." (Defs.' Statem. of Undisp. Mat. Facts Supp. Joint Mot., Ex. A at 2 [Doc. 95-1] and Ex. D at 2 [Doc. 95-6].) The Ordinance, therefore, has a legitimate, non-punitive, public safety purpose.[12] Moreover, the use of red light cameras and related proceedings are rationally connected to the valid public safety purpose of reducing traffic accidents at traffic light intersections. This factor, then, weighs in favor of a determination the Ordinance and its penalty are civil in nature.

---

[12] Plaintiffs argue, based on information beyond the language and structure of the Ordinance and only available after enactment of the Ordinance, that a reduction of accidents at those City intersections having red light cameras has not actually occurred and there has been a "significant impact on the Defendants' revenue," or more specifically increased revenue, as a result of the red light cameras. (Plfs.' Br. Opp'n. Joint Mot. at 8 [Doc. 107]; Pls.' Statem. Disp. Mat. Facts in Opp'n. Defs.' Joint Mot. ¶¶ 1, 62 [Doc. 106].)  To the extent the Court may consider this information, the information does not change the public safety purpose of the Ordinance or create a genuine issue regarding the Ordinance's purposes.  Legislation "is not deemed punitive simply because it lacks a close or perfect fit with the nonpunitive aims it seeks to advance."  **Smith**, 538 U.S. at 103.  Any evidence of the effect the red light cameras may have had on the amount of accidents at traffic signal intersections or the amount of revenue in the City's coffers does not indicate the non-punitive, public safety purpose of the Ordinance was pretextual or a sham at the time the Ordinance was enacted. **Cf. id.** ("The imprecision [the plaintiffs] rely upon[, that the statute is not narrowly drawn to accomplish the public safety purpose] does not suggest that the [statute]'s nonpunitive [public safety] purpose is a 'sham or mere pretext.' Hendricks, 521 U.S. at 371 . . . (Kennedy, J., concurring).")

For the seventh factor, the Court considers whether the penalty seems excessive in relation to the alternative purpose. **Hudson**, 522 U.S. at 99-100. Plaintiffs argue that "imprisonment is excessive in relation to the purported public safety purpose" of the Ordinance. (Plfs.' Br. Opp'n. Joint Mot. at 8 [Doc.107].) The Court has concluded, however, that the only available penalty under the Red Light Camera Ordinance is the imposition of a fine, and the fine reportedly is $94.50 (First Am. Compl., Exs. 2B, 2C, and 2D [Doc. 4-1 at 7-9]). The amount of the potential fine for violating a red light enforced through a camera is not excessive in relation to the public safety purpose of the Ordinance. This factor also weighs in favor of a determination that the Ordinance and its penalty are civil in nature.

Plaintiffs urge that a proceeding under the Ordinance is criminal in nature due to the fact that "the rules of criminal procedure apply, including the criminal standard of proof beyond a reasonable doubt." **City of Webster Groves v. Erickson**, 789 S.W.2d 824, 826 (Mo. Ct. App. 1990) (citation omitted). However, the fact that a proceeding under the Ordinance is "accompanied by procedural safeguards usually found in criminal trials," such as the requirement of proof beyond a reasonable doubt, does not alone "turn the[ Ordinance] proceedings into criminal prosecutions requiring the full panoply of rights applicable there." **Allen**, 478 U.S. at 371 (concluding the availability of the right to proof beyond a reasonable doubt, among other constitutional rights in criminal cases, in a sexually dangerous persons civil commitment proceeding did not make such a proceeding criminal in nature). Because

the Court has concluded that all other factors properly considered to ascertain, as a matter of federal law, whether the Ordinance and its remedy are civil or criminal in nature favor a conclusion that the Ordinance and its remedy are civil in nature, the applicability of state criminal procedural rules to an Ordinance violation proceeding is not sufficient to change the nature of the Ordinance and its remedy from civil to criminal.[13]

The Court's conclusion that the Red Light Camera Ordinance and its penalty are civil in nature is further supported by dicta in **Shavitz**, supra.  In **Shavitz**, after concluding the plaintiff lacked standing to pursue his constitutional due process challenges to the state statute and city ordinance regarding red light cameras, the United States District Court for the Middle District of North Carolina determined, in relevant part, that the statute and ordinance were civil in nature.  **Shavitz**, 270 F. Supp.2d at 709-21.  In particular, the Middle District of North Carolina found that the statute and ordinance expressly provided for civil proceedings and penalties, **id.** at 713-14; the monetary penalty imposed for a red light camera violation did not impose an affirmative restraint or disability, **id.** at 714; "monetary assessments can be imposed under both civil and criminal statutes and . . . are traditionally viewed as a form of civil remedy," **id.**; the absence of scienter weighed in favor of finding

_____

[13] Notably, Missouri case law supports a determination that an ordinance violation is civil in nature.  See, e.g., **Frech v. City of Columbia**, 693 S.W.2d 813, 814 (Mo. 1985) (en banc) ("the violation of a municipal ordinance is a proceeding that is civil, rather than criminal, in nature.  Kansas City v. Stricklin, 428 S.W.2d 721 (Mo. 1968) [(en banc)]"); **City of Webster Groves**, 789 S.W.2d at 826 ("even when an ordinance authorizes incarceration as a punishment, violation of the ordinance is not usually regarded as a crime").

the enforcement scheme civil rather than criminal, **id.** at 715; there is "some deterrent effect" in the assessment of a civil fine, although the primary purpose is safety, and this factor "cuts in favor of" the suggestion that the ordinance is criminal in nature, **id.**; the fact that another statutory scheme allows punishment of the same conduct as a criminal infraction does not transform the scheme from civil to criminal, especially when the civil penalties are in subsequently enacted legislation, **id.**; the primary purpose of the challenged ordinance and enabling statute "is to promote public safety" and the challenged provisions are "rationally connected to advancing this alternative purpose," so this factor weighs in favor of finding the challenged laws civil in nature, **id.** at 715-16; and "the $50.00 civil penalty is not excessive in relation to the alternative purpose of promoting public safety," **id.** at 716. See **Idris v. City of Chicago,** No. 06 C 6085, 2008 WL 182248, *6 (N.D. Ill. Jan. 16, 2008) (rejecting various challenges to a red light camera ordinance having a $90.00 fine, including a double jeopardy challenge after finding the penalty was civil rather than criminal), aff'd, 552 F.3d 564 (7th Cir. 2009); **City of Knoxville v. Brown**, 284 S.W.3d 330, 336-39 (Tenn. Ct. App. 2008) (rejecting various challenges to a red light camera ordinance having a $50.00 penalty, including an ultra vires challenge after finding the proceeding was civil in nature); cf. **Sevin v. Parish of Jefferson,** 08-802, 2009 WL 1402332, at *4, *5, *6-10 and *11-13 (E.D. La. May 14, 2009) (noting "the classification of the [red light camera] ordinance [as civil or criminal] determines which procedures are constitutionally required," but finding it unnecessary to decide whether the challenged ordinance was civil or criminal in nature

because the defendants were entitled to judgment as a matter of law "irrespective of whether the ordinance is classified as civil or criminal"; then discussing the constitutional challenges to the red light camera ordinance as criminal in nature and as civil in nature); **State v. Dahl**, 87 P.3d 650, 652 n.6 (Or. 2004) (en banc) (noting the defendant did not argue an automated traffic enforcement offense for speeding was criminal in nature, in a case in which the defendant presented due process challenges to the statute's rebuttable presumption that the vehicle's owner was the driver).

Having considered the relevant factors, the Court concludes that Plaintiffs have not shown, much less by the clearest proof, either that the effects of the Ordinance and its penalty negate City's intention to create a civil Ordinance and remedy, or that there is a genuine issue of material fact regarding the intention to create a civil proceeding and remedy through the Red Light Camera Ordinance. Nor have Plaintiffs shown there is a genuine issue of material fact regarding whether or not the Ordinance and its penalty are civil in nature. The Ordinance and its remedy are civil in nature. Therefore, Plaintiffs' § 1983 claims, which rely on a determination that the Ordinance and its remedy are criminal in nature, lack merit. See **Agomo v. Fenty**, 916 A.2d 181, 193 (D.C. 2007) (noting that explicit code language made "[i]t . . .clear . . . that violations under the [Automated Traffic Enforcement] System impose only civil liability in the form of a modest fine, and thus analysis [of a due process challenge to the code's rebuttable presumption] under the rubrics of criminal law is inappropriate" (footnote omitted)).

Defendants are entitled as a matter of law to summary judgment in their favor on Plaintiff's § 1983 claims, and Defendants' Joint Motion for summary judgment is granted with respect to those claims.

RICO Claims. Defendants argue they are entitled to entry of summary judgment in their favor on Plaintiffs' RICO claims because there is no enterprise and Defendants have not engaged in racketeering activity.

The only RICO claims remaining in this case are alleged substantive (Count I) and conspiracy (Count II) violations of RICO, 18 U.S.C. §§ 1962 and 1964[14] (§§ 1962 and 1964), by ATS and by Police Chief, sued in his individual capacity only. (First Am. Compl. at 14-19 [Doc. 4]). The specific provision supporting Plaintiffs' substantive RICO claim is 18 U.S.C. § 1962(c), which makes it

> unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

The only conspiracy provision in § 1962 is § 1962(d), which provides in relevant part that it is unlawful for any person to conspire to violate § 1962(c). Because Plaintiffs' RICO

---

[14]   In general, 18 U.S.C. § 1964 provides that the United States district courts have jurisdiction to prevent and restrain violations of 18 U.S.C. § 1962, 18 U.S.C. § 1964(a); the Attorney General may institute proceedings under the section, 18 U.S.C. § 1964(b); with exceptions not applicable here, "any person injured in his business or property by reason of a violation of section 1962" may sue and recover "threefold the damages [the party] sustains and the cost of the suit, including a reasonable attorney's fee," 18 U.S.C. § 1964(c); and a criminal RICO conviction estops the defendant from "denying the essential allegations of the criminal offense in any subsequent civil proceeding brought by the United States," 18 U.S.C. § 1964(d).

conspiracy claim is based on a conspiracy to violate § 1962(c), the conspiracy claim fails if the substantive claim under § 1962(c) fails.  See **Tal v. Hogan**, 453 F.3d 1244, 1270 (10th Cir. 2006) ("[b]ecause Appellants have failed to allege a sufficient claim under subsections (b) or (c) [of 18 U.S.C. § 1962], their subsection (d) conspiracy claim fails as a matter of law"); **Lum v. Bank of Am.**, 361 F.3d 217, 227 n.5 (3rd Cir. 2004) (noting the district court properly dismissed the RICO conspiracy claim under 18 U.S.C. § 1962(d) after correctly finding that the plaintiffs' substantive RICO claim under 18 U.S.C. § 1962(c) failed).  Therefore, the Court will first address whether Plaintiffs' substantive claim under 18 U.S.C. § 1962(c) survives Defendants' Joint Motion.

To establish a violation of § 1962(c), Plaintiffs must show, in relevant part, "(1) the existence of an enterprise; (2) defendant's association with the enterprise; (3) defendant's participation in predicate acts of racketeering; and (4) defendant's actions constitute a pattern of racketeering activity." **United HealthCare Corp. v. American Trade Ins. Co.**, 88 F.3d 563, 570 (8th Cir. 1996); accord **Nitro Distrib., Inc. v. Alticor**, 565 F.3d 417, 428 (8th Cir. 2009) ("A violation of § 1962(c) requires [a showing of] '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.' Sedima, S.P.R.L. . . . , 473 U.S. [at] 496 . . ."). These elements "must be established as to each individual defendant." **Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc.**, 528 F.3d 1001, 1028 (8th Cir. 2008), cert. denied, 129 S.Ct. 1000 (2009).  If one element of a RICO claim is not established, the Court need not address the other elements. **Dahlgren**, 533 F.3d at 692; see **Craig Outdoor Adver.,**

**Inc.**, 528 F.3d at 1028 ("[f]ailure to present sufficient evidence on any one element of a RICO claim means the entire claim fails").

For their RICO claims, Plaintiffs allege that ATS and Police Chief committed extortion and/or fraud by using the mail to mail the Notices of Violation and obtaining or attempting to obtain money from Plaintiffs through the collection of unlawful fines. (First Am. Compl. ¶¶ 48(a)-48(c), 49 [Doc. 4].)  In relevant part, Plaintiffs allege the fines, and enforcement system, are unlawful because they conflict with Mo. Rev. Stat. "§ 302.302 by guaranteeing that no points will be assessed for the moving violation if the required fine is paid"; because they require "alleged violators to prove their innocence rather than requiring the City to prove the existence of guilt"; and they "threaten[] an arrest warrant will be issued if the ticket is not resolved knowing that if a trial is requested that the case will be dismissed since actual criminal culpability cannot be proven on the evidence generated by the Red Light Camera System." (Id. ¶ 48d [Doc. 4].)  ATS allegedly "participated in this scheme by developing and enacting the scheme to defraud Plaintiffs . . . . " (Id. ¶ 49(b).)  Police Chief allegedly "participated in this scheme by either directing his officers to issue Notices of Violations or by failing to train, instruct and supervise his officers in the proper legal standard required to . . . issue Notices of Violations to Plaintiffs . . . ." (Id. ¶ 49(c).)  Therefore, Plaintiffs base their RICO claims against ATS and Police Chief, in his individual capacity only, on allegations those Defendants engaged in mail fraud and extortion in the enforcement of the Red Light Camera Ordinance.

RICO defines "racketeering activity" as including certain specified crimes, including extortion and mail fraud. 18 U.S.C. § 1961(1). Therefore, mail fraud and extortion may be predicate acts sufficient to support RICO claims. **Blue Dane Simmental Corp. v. American Simmental Ass'n,** 178 F.3d 1035, 1041 (8th Cir. 1999) (mail fraud may constitute a predicate act for RICO); **I. S. Joseph Co. v. Lauritzen A/S**, 751 F.2d 265 (8th Cir. 1984) (discussing extortion as "racketeering" for a RICO claim). Extortion is "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear or under color of official right." 18 U.S.C. § 1951(b)(2). Mail fraud occurs when a person "devises a 'scheme or artifice to defraud' and uses the mails 'for the purpose of executing such scheme or artifice' 18 U.S.C. § 1341." **Schoedinger v. United Healthcare of the Midwest, Inc.**, 557 F.3d 872, 876 (8th Cir. 2009).

Here, the alleged mail fraud and extortion arise out of the implementation of the Ordinance and the Agreement between ATS and the City, according to their terms, and the enforcement of the Ordinance in accordance with its terms. There is no evidence that, in implementing and enforcing the Ordinance and Agreement, either ATS or Police Chief engaged in conduct beyond that allowed by the Red Light Camera Ordinance and the Agreement. There is no evidence that either the Ordinance or the Agreement arose out of fraudulent, deceptive, or extortionate conduct. There is no evidence that, in the implementation and enforcement of the Ordinance or Agreement either ATS or Police Chief acted wrongfully or unlawfully; acted to obtain money through false pretenses; had the intent

to defraud; used force, violence, or fear to obtain money from Plaintiffs; or threatened to use force, violence, or fear to obtain money from Plaintiffs. There is no evidence that Plaintiffs did not own the vehicles that were the subject of the Notices of Violation or that the violations did not occur as reported. Additionally, there is no evidence that ATS or Police Chief acted with reckless disregard for whether the statements in the Notices of Violation were true.[15] See **Diamonds Plus, Inc. v. Kolber**, 960 F.2d 765, 768-69 (8th Cir. 1992) (noting for mail fraud, intent to defraud may "be demonstrated when the defendant recklessly disregards whether his representations are true"). Plaintiffs have not provided any evidence to raise a genuine issue of material fact about whether ATS or Police Chief engaged in racketeering activity or predicate acts of mail fraud or extortion in the implementation and enforcement of the Ordinance or the implementation of the Agreement.

The predicate acts of racketeering allegedly supporting Plaintiffs' RICO claims are

---

[15] In support of their position that Defendants' acted with reckless disregard and knowledge of the wrongfulness of their conduct, Plaintiffs point to a memorandum of a law firm's opinion, dated May 24, 2005, that ATS reportedly received and provided to City suggesting that a municipality could not, as part of a red light camera ordinance, "circumvent the Missouri Director of Revenue's point system for the suspension and revocation of motor vehicle licenses." (Pls.' Statem. Disp. Mat. Facts Opp'n Joint Mot. ¶¶ 45-49 and Ex. 12 at 2 [Doc. 106 and Doc. 106-1 at 35].) The Court does not find this presents a genuine issue of fact regarding the propriety or lawfulness of Defendants' alleged racketeering activity or predicate acts in sending Notices of Violation after the Ordinance was enacted, because the opinion was dated before the Red Light Camera Ordinance was first enacted and approximately three years before Plaintiffs received their Notices of Violation. More importantly, Plaintiffs rely on that opinion as showing an intent to defraud because Defendants knew "representations that no points would be assessed against an owner's driver['s] license if [the owner] simply paid the fee imposed" were improper based on that opinion. (Plaintiffs.' Br. Opp'n Joint Mot. at 17-18 [Doc. 107].) The Notices of Violation sent to Plaintiffs do not, however, mention or make any representations about the assessment of points against a driver's license. (See, e.g., First Am. Compl., Ex. 2 [Doc. 4-1 at 5-6].)

based solely on Plaintiffs' position that the terms of the Ordinance and its enforcement are invalid as violating state law or federal constitutional law, therefore the fines sought through and proceedings resulting from the mailed Notices of Violation are fraudulent and extortionate. The Court concludes a RICO claim does not encompass such allegations; otherwise, a RICO claim would exist in any instance when a party challenged the validity of a legislative provision and the implementation of that provision. As the United States District Court for the District of Colorado concluded in a RICO case: "Mail fraud is not committed simply by sending notices through the mail, even if the recipient . . . perceives them as fraudulent based upon his feelings about the . . .state . . . authorities." **Tassio v. Mullarkey,** No. 07-cv-02167-WYD-KMT, 2008 WL 3166149, at *18 (D. Colo. Aug. 5, 2008) (discussing a RICO claim arising out of the mailing of tax deficiency and related notices to the plaintiff). The mailing of notices under the circumstances of this case also does not constitute racketeering activity based on extortion, because nothing in the Notices of Violation is "wrongful," except to the extent Plaintiffs challenge the validity of the Ordinance and its implementation.

Because there is no genuine issue of material fact regarding Defendants' racketeering activity or predicate acts necessary to Plaintiffs' substantive RICO claim under 18 U.S.C. § 1962(c), and no racketeering activity or predicate acts by ATS or Police Chief exist, Defendants are entitled to summary judgment as a matter of law on that RICO claim and the related RICO conspiracy claim under 18 U.S.C. 1962(d). See **Demerath Land Co. v. Sparr**,

48 F.3d 353, 355 (8th Cir. 1995) (summary judgment was properly entered in RICO case where the party opposing the motion "adduced no evidence whatsoever of the requisite intent to defraud"). Accordingly, Defendants' Joint Motion is granted with respect to Plaintiffs' RICO claims.

Supplemental jurisdiction over state claims. Finally, Defendants urge the Court to decline to exercise supplemental jurisdiction[16] over Plaintiffs' state law claims for abuse of process, fraudulent misrepresentation, and civil conspiracy because the issues are unique to Missouri law and should be litigated and decided in Missouri state court. (Defs.' Mem. Supp. Joint Mot. at 26 [Doc. 96]; Defs.' Joint Reply Supp. Joint Mot. at 15 [Doc. 114].)

Having dismissed all the federal claims over which it has original jurisdiction and finding the state claims raise novel issues of state law, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims. 28 U.S.C. § 1367(c). Therefore, Defendants' Joint Motion will also be granted with respect to Plaintiffs' state law claims only insofar as those claims are dismissed without prejudice.

Because the federal claims are dismissed with prejudice and the state law claims are dismissed without prejudice, the Separate Motion is denied as moot.

---

[16] This Court lacks diversity jurisdiction over Plaintiffs' state law claims. A federal district court has diversity jurisdiction where the amount in controversy is greater than $75,000 and there is complete diversity of citizenship. 28 U.S.C. § 1332(a); **Capitol Indem. Corp. v. Russellville Steel Co.,** 367 F.3d 831, 835 (8th Cir. 2004). "Complete diversity of citizenship exists where no defendants hold citizenship in a state where any plaintiff holds citizenship." **Capitol Indem. Corp.,** 367 F.3d at 835. In this case, all Plaintiffs and most Defendants are citizens of Missouri. Therefore, complete diversity of citizenship does not exist.

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants' Joint Motion for Summary Judgment [Doc. 94] is **GRANTED**.

**IT IS HEREBY FURTHER ORDERED** that the Separate Motion for Summary Judgment filed by all Defendants, except ATS, [Doc. 99] is **DENIED as moot.**

**IT IS HEREBY FURTHER ORDERED** that Plaintiffs' state law claims for abuse of process (Count VII), fraudulent misrepresentation (Count VIII), and civil conspiracy (Count IX) are **DISMISSED WITHOUT PREJUDICE.**

A separate Judgment shall be entered in accordance with this Order.

 /s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this 23rd day of July, 2009.